## A03A1890. WAUGH et al. v. WAUGH.
## A03A1891. JONES v. WAUGH.
### (595 SE2d 647)

SMITH, Chief Judge.

In these two appeals, Sara Alene Waugh (Alene), the wife of Charles Woodrow Waugh, Jr. (Charlie), and their two daughters, Gail Stone and Jewel Moore (Case No. A03A1890), and Joseph W. Jones, the administrator of Charlie's estate (Case No. A03A1891), challenge the judgment entered on jury responses to special interrogatories in an action brought by Charles Coymac Waugh (Mack), Charlie and Alene's son. The jury found that Charlie had an equal partnership with Mack in a family business, entitling Mack to Charlie's share of the business. Over the years, Charlie had used the profits from the business to purchase certificates of deposit in his name, and the jury also awarded Mack 20 percent of these profits. Jones, Alene, Stone, and Moore all claim that the evidence presented at trial does not support the jury's responses to the interrogatories and that the trial court should have granted their motion for judgment notwithstanding the verdict as to these issues. Alene, Stone, and Moore also contend that no evidence supported the jury's conclusion that Stone and Moore interfered with Lamar Wingo, the guardian ad litem appointed for Charlie, or that they prevented the performance of any of Charlie's lawful obligations.[1] We find that evidence exists in the record to support all the jury interrogatory responses, and we find that the trial court correctly denied the motion for judgment n.o.v.

"On appeal, this Court must concentrate on the evidence which supports the verdict, not that evidence which undermines it. [Cit.]" *Moghangard v. Keshavariz*, 239 Ga. App. 255, 257 (520 SE2d 59) (1999). So viewed, the evidence presented at trial showed that Charlie and Mack both worked in the family business, an auto parts junkyard begun by Charlie. Mack started working with Charlie in the business when he was a child, and he began working in the business full time when he left school at age 16. He was paid only what he needed "to get me by." Legal title to the business property was maintained in Charlie's name, but Charlie and Mack understood that they were partners and that eventually the business would belong to Mack. Mack oversaw many financial aspects of the business, paying business license fees, ad valorem taxes on the inventory, real estate taxes, and sales taxes. In addition, he took care of some of his parents' personal needs. He installed central heat and air in his parents'

---

[1] We note that Mack originally brought the suit against his father, mother, and two sisters. Because all parties agreed that Charlie was incompetent, Wingo was named his guardian ad litem. Charlie died between the trial and the expiration of the period for appeal, and Jones was appointed administrator of Charlie's estate.

home and paid their utility bills. He was responsible for making bank deposits from the business proceeds and purchasing certificates of deposit, although these were purchased in Charlie's name. Alene and Mack's sisters were not aware that over time, these time deposits had grown to more than $300,000.

Because of Charlie's advancing age, Mack's sisters consulted an attorney in 1994 about preparing a will for Charlie. Mack agreed that Charlie needed a will. In connection with the will preparation, Mack told his mother and his sisters about the large sum of money in certificates of deposit, and Charlie became angry with Mack. The lawyer eventually learned that Charlie "wasn't very interested in making a will," and this project was abandoned. Later the same year, Charlie quitclaimed to Alene a one-half undivided interest in that portion of his land on which the business is located, and Charlie and Alene then conveyed that property to Mack.

In 1995, Charlie's mental health became poorer, and he could no longer make responsible decisions. He had become completely incapacitated by September 1996, when Alene, Stone, and Moore, using a faulty tax plat from the Troup County Tax Assessor's office that they knew was erroneous, convinced Charlie that Mack had cheated him. Mack was thereafter ordered from the property, and he eventually filed this action.

1. In both appeals, appellants contend in two enumerations of error that no evidence was presented from which the jury could have found the existence of a partnership or an enforceable agreement between Charlie and Mack. We do not agree.

(a) Evidence was presented showing that Mack and his father worked in the business together for almost 40 years. Mack testified that he and his father understood they were partners, which meant that he owned "half" of the business. He further understood that "when something happened to him [(Charlie)], he got tired fooling with it or whatever, his part of the junkyard would be mine." Several other witnesses testified that they had known and done business with Charlie and Mack for a number of years and that they understood that the father and son were partners, that Charlie told them the business belonged to both of them, that he and Mack pooled their profits and deposited them in the bank, and that Charlie intended to turn everything over to Mack. Mack's former wife testified that Alene persuaded Mack to go into the business by telling him it would some day be his. This evidence was sufficient to support the jury's finding that Charlie and Mack had a partnership.

(b) Appellants contend that no evidence was presented from which the jury could find that an enforceable contract existed between Charlie and Mack because even if an agreement existed, it

was too "indefinite and uncertain in its alleged material provisions." We find no merit in this argument.

We have determined that the jury correctly concluded that a partnership existed between Charlie and Mack. "A partnership is an association of two or more persons to carry on as co-owners a business for profit. A partnership results from a contract, either express or implied." (Citations and punctuation omitted.) *Clark v. Schwartz,* 210 Ga. App. 678, 679 (436 SE2d 759) (1993). Mack testified that his father had already given him a one-half interest in the business, thereby partially executing the contract that resulted in their partnership. The jury concluded that under that contract, it was further understood between Charlie and Mack that when Charlie became unable to continue in the business, Mack would take over Charlie's half as well. We affirmed this decision in Division 1 (a).

The jury also concluded that Mack was entitled to 20 percent of the certificates of deposit, which constituted his share of the past proceeds of the business. Appellants argue that no evidence was presented upon which the jury could have based this conclusion and that this term of the contract was therefore too indefinite to be enforceable. "To constitute a valid contract, there must be parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject matter upon which the contract can operate." OCGA § 13-3-1. The contract at issue here meets those requirements.

Contrary to appellants' argument, it is only when the indefiniteness of the subject matter is "so extreme as not to present anything upon which the contract may operate in a definite manner" that the contract is rendered void. (Citation and punctuation omitted.) *Lemming v. Morgan,* 228 Ga. App. 763, 764-765 (1) (492 SE2d 742) (1997). Here, Mack testified that he "had the final say on any money that was spent out of" the proceeds of the business, other than the funds Charlie took out to live on, and that Charlie trusted him to "see that the money was used right." Charlie trusted Mack to handle the accumulated profits appropriately, and Mack never took the position that he was entitled to all of the certificates. Given that the interests of five persons were to be looked after by Mack in his stewardship of these proceeds, the jury had some evidence from which to conclude that Mack was entitled to one-fifth, or twenty percent, of the certificates of deposit. This evidence is not overwhelming, but although "the evidence in favor of the plaintiff in the lower court is weak, it is sufficient to support the finding of the jury, which has the approval of the trial judge; and it can not be said that he abused his discretion in overruling the motion for [judgment n.o.v. or] a new trial." *Short v. Cofer,* 161 Ga. 587 (4) (131 SE 362) (1926). This enumeration furnishes no ground for reversal.

2. We also cannot agree with the appellants' contentions that the verdict is "too vague, uncertain, and indefinite to be capable of execution" and that it is "both inconsistent and contradictory." The "inconsistency" apparently referred to by appellants in this case is in the portion of the special interrogatory form requiring the jury to list the partnership's assets on blank lines. The jury filled in the form, and in one entry listed "buildings & contents (except for personal property of Charlie & Alene Waugh)." Appellants maintain that this listing is "nonsensical." But in the context of the evidence presented, it is clear that the jury was referring to personal household property belonging to Charlie and Alene, which the evidence at trial showed Mack had allowed them to store in one of the metal buildings he erected on the junkyard's real property. "The verdict in this case is not too vague and uncertain to be enforced. Verdicts are to be given a reasonable intendment, and are not to be avoided unless from necessity." *Short,* supra at 587 (1).

3. The jury found that Stone and Moore maliciously interfered with the contract between Charlie and Mack. In Case No. A03A1890, Alene, Stone, and Moore also maintain that the trial court erred in denying their motion for judgment n.o.v. because no evidence was presented from which the jury could have reached this conclusion. Again, we do not agree.

To prevail on a claim of tortious interference, Mack was required to show an independent, wrongful act of interference by strangers to the contract, a malicious intent to injure, and damage resulting from the interference. See, e.g., *Barnwell v. Barnett & Co.,* 222 Ga. App. 694, 695 (1) (476 SE2d 1) (1996). The evidence presented at trial authorized the jury to find that Stone and Moore, who were not parties to the contract between Charlie and Mack, acted in concert to prevent Charlie from carrying out the terms of his agreement with Mack by intentionally using a tax plat they knew was erroneous to mislead Charlie into believing that Mack had cheated him out of some property. Their deceptive scheme resulted in Mack's filing this lawsuit, with its concomitant expenses, to effectuate the terms of the contract. This evidence was sufficient to authorize the jury to find that Stone and Moore tortiously interfered with the contract, and the trial court did not err in denying Stone and Moore's motion for judgment n.o.v. as to this issue.

*Judgment affirmed. Ruffin, P. J., and Miller, J., concur.*

DECIDED FEBRUARY 24, 2004.

*Willis, McKenzie & Long, Dewey R. McKenzie, Jr.*, for appellants.
*Kirby & Roberts, L. Jack Kirby*, for appellee.