## A05A0924. MITCHELL v. CAMBRIDGE PROPERTY OWNERS ASSOCIATION, INC.

(623 SE2d 511)

RUFFIN, Chief Judge.

Cambridge Property Owners Association, Inc. (the "Association") sued Bernard Mitchell, seeking an injunction to compel Mitchell to return his resurfaced driveway in the Cambridge subdivision to its original state. Following a bench trial, the trial court granted the injunction. Mitchell appeals, contending (1) that the trial court erred in holding that the language of the Cambridge covenants required Mitchell to seek the Association's approval before resurfacing his driveway; and (2) that the trial court's interpretation renders the covenants so indefinite that they become void. For reasons that follow, we disagree and affirm.

Mitchell's home in the Cambridge subdivision is subject to certain restrictive covenants. The covenants provide in pertinent part that:

[n]o building, storage house, cabana, fence, wall, swimming pool, or other structure shall be commenced, erected or maintained, nor shall any addition to, exterior change or alteration thereto be made, until the plans and specifications showing the nature, kind, shape, height, materials, floor plans, exterior color scheme, location, approximate square footage and the grading and landscaping of the lot shall have been submitted to and approved in writing by the Architectural Control Committee. The Architectural Control Committee shall have the right to refuse to approve any such building plans, specifications, site plans, landscaping or grading plans which are not suitable or desirable in its sole opinion for any reason, including purely aesthetic reasons.

After purchasing the property, Mitchell resurfaced his driveway without the approval of the Association's Architectural Control Committee (the "Committee"), in a manner that the Committee found unsuitable for aesthetic reasons.

1. Mitchell contends that the trial court erred in holding that the explicit language of the covenants required him to seek the approval of the Committee before resurfacing his driveway. Specifically, he argues that a driveway is not a "structure" and thus does not fall within the covenants' restrictions. Restrictive covenants are special-

ized contracts that run with the land.[1] Contract interpretation is a three-step process:

> [I]nitially, construction is a matter of law for the court. First, the trial court must decide whether the language is clear and unambiguous. If it is, the court simply enforces the contract according to its clear terms; the contract alone is looked to for its meaning. Next, if the contract is ambiguous in some respect, the court must apply the rules of contract construction to resolve the ambiguity. Finally, if the ambiguity remains after applying the rules of construction, the issue of what the ambiguous language means and what the parties intended must be resolved by a jury [or other factfinder]. The existence or nonexistence of an ambiguity is a question of law for the court. If the court determines that an ambiguity exists, however, a jury question does not automatically arise, but rather the court must first attempt to resolve the ambiguity by applying the rules of construction in OCGA § 13-2-2.[2]

The language of the covenant at issue does not expressly state whether its restrictions on the construction or alteration of structures apply to a driveway. Thus, we must apply the rules of contract construction to resolve this ambiguity. Among those rules is the provision that "[w]ords generally bear their usual and common signification."[3] Black's Law Dictionary defines "structure" as "[a]ny construction, production, or piece of work artificially built up or composed of parts purposefully joined together."[4] A driveway certainly meets this definition. A driveway is a construction composed of parts purposefully joined together. A driveway, then, is a "structure" within the common meaning of that term as well as the meaning of the covenants.[5]

Furthermore, the goal of contract construction is to carry out the intent of the parties.[6] And we consider the entire document when determining the intent of the parties in creating restrictive covenants.[7] Here, the intent of the parties is to preserve the enjoyment

---

[1] See *Lake Arrowhead Property Owners Assn. v. Dalton*, 257 Ga. App. 655, 656 (1) (572 SE2d 25) (2002).

[2] (Punctuation omitted.) *White v. Kaminsky*, 271 Ga. App. 719, 721 (610 SE2d 542) (2004).

[3] OCGA § 13-2-2 (2).

[4] Black's Law Dictionary (8th ed. 2004).

[5] See, e.g., *Horton v. Mitchell*, 29 P3d 870, 874-875 (Ariz. App. 2001) (holding roadway is structure within ordinary meaning of word and in accordance with use of term in restrictive covenants).

[6] See OCGA § 13-2-3; *White v. Legodais*, 249 Ga. 849 (295 SE2d 99) (1982).

[7] See *Licker v. Harkleroad*, 252 Ga. App. 872, 874 (2) (558 SE2d 31) (2001).

and value of their respective properties by ensuring that residents obtain approval from the Committee for substantive changes to the appearance of a property. This is evidenced by the above-quoted language from the covenants, as well as additional provisions giving the Committee control over the removal of trees, shrubs and other vegetation; the installation of antennae and satellite dishes; the placement of fences, hedges, vegetable gardens and unsightly items; and the parking of campers, motorcycles, large trucks, boats, and boat trailers. The covenants also contain procedures consistent with Committee approval of driveway changes; they provide that building plans submitted to the Committee "shall show the driveway, service court or area, parking and any other buildings, improvements or facilities to be constructed." Accordingly, the trial court did not err in finding as a matter of law that Mitchell was required to seek the Committee's approval before resurfacing his driveway.[8]

2. Mitchell also argues that the trial court's interpretation of the covenants is so broad as to render them vague and unenforceable. He claims that the covenants, if read as broadly as the trial court read them, would cover so many items related to a house's exterior appearance that they would be indefinite and void. We disagree. "[I]t is only when the indefiniteness of [a contract's] subject matter is 'so extreme as not to present anything upon which the contract may operate in a definite manner' that the contract is rendered void."[9] That is not the case here. For the reasons discussed in Division 1, we find the covenants sufficiently specific to be enforced.[10]

*Judgment affirmed. Johnson, P. J., and Barnes, J., concur.*

DECIDED SEPTEMBER 21, 2005 —
RECONSIDERATION DENIED NOVEMBER 14, 2005.

*John M. Brown*, for appellant.
*Andrew J. Kilpatrick II*, for appellee.

---

[8] See *Elite Realty Svcs. v. City of Auburn*, 272 Ga. 195, 196 (528 SE2d 236) (2000); see also *Black Island Homeowners Assn. v. Marra*, 274 Ga. App. 265 (617 SE2d 148) (2005) (we review the trial court's grant of a permanent injunction based on a question of law under the plain legal error standard).

[9] *Waugh v. Waugh*, 265 Ga. App. 799, 801 (1) (b) (595 SE2d 647) (2004).

[10] See *White v. Legodais*, supra at 849-850 (1).