A06A1256. SKYLAKE PROPERTY OWNERS ASSOCIATION, INC. v. POWELL et al.
(637 SE2d 51)

ELLINGTON, Judge.

Skylake Property Owners Association, Inc. appeals from an order of the Superior Court of White County granting partial summary judgment in favor of Harry and Kay Powell, owners of a residential lot within the Skylake development. The Powells filed a complaint, seeking damages and an injunction to prevent the Association from stopping construction of their new home. The Association answered and counterclaimed, contending the Powells failed to obtain approval to build a retaining wall on their property that violated a subdivision restrictive covenant. The parties moved for summary judgment, and the court denied both motions in most respects, finding that issues of fact remained for jury resolution. However, the court found in favor of the Powells in part, when it construed a section of the applicable restrictive covenants such that the covenant does not prohibit the construction of a retaining wall within a setback line. The Association appeals from this ruling. It also challenges the denial of its motion for summary judgment and the court's order allowing the Powells to amend and restate their complaint. Finding no error, we affirm.

1. The Association contends the trial court erred in holding that Section 11 (d) (ii) of the restrictive covenants pertaining to use

restrictions "does not create a *per se* prohibition on the construction of a retaining wall within the twenty foot set back line." Specifically, the Association argues that a retaining wall is a "structure" and that the restrictive covenant prohibits any structure from being "erected closer than twenty (20) feet from the side line of any Lot."

"Restrictive covenants are specialized contracts that run with the land." (Footnote omitted.) *Mitchell v. Cambridge Property Owners Assn.*, 276 Ga. App. 326, 326-327 (1) (623 SE2d 511) (2005). As with other contracts, the interpretation of restrictive covenants is a three-step process. Id.

> Initially, construction is a matter of law for the court. First, the trial court must decide whether the language is clear and unambiguous. If it is, the court simply enforces the contract according to its clear terms; the contract alone is looked to for its meaning. Next, if the contract is ambiguous in some respect, the court must apply the rules of contract construction to resolve the ambiguity. Finally, if the ambiguity remains after applying the rules of construction, the issue of what the ambiguous language means and what the parties intended must be resolved by a jury or other factfinder. The existence or nonexistence of an ambiguity is a question of law for the court. If the court determines that an ambiguity exists, however, a jury question does not automatically arise, but rather the court must first attempt to resolve the ambiguity by applying the rules of construction in OCGA § 13-2-2.

(Punctuation and footnote omitted.) Id. at 327 (1).

Section 11 of the Amended and Restated Declaration of Covenants and Restrictions for Skylake pertains generally to Use Restrictions. Section 11 (d) pertains to Improvements on Lots. Section 11 (d) (ii) provides, in relevant part:

> Except with the express written permission of the Board or its designee, no house or portion thereof, garage, carport, playhouse, outbuilding, or other structure shall be erected closer than twenty (20) feet from the side line of any Lot, forty (40) feet from the rear line of any Lot, and forty (40) feet from the front line of any Lot.

The word "structure" is not defined in the covenants. Because the covenant does not expressly state whether a retaining wall may be erected within the 20-foot setback, an ambiguity exists. See *Mitchell v. Cambridge Property Owners Assn.*, 276 Ga. App. at 326-327 (1).

"Thus, we must apply the rules of contract construction to resolve this ambiguity." Id. at 327 (1).

One such rule is that "[w]ords generally bear their usual and common signification." OCGA § 13-2-2 (2). "Structure" is defined as "[a]ny construction, production, or piece of work artificially built up or composed of parts purposefully joined together." Black's Law Dictionary (8th ed. 2004). Thus, using this definition and applying this rule of contract construction, a retaining wall would certainly qualify as a structure. But so would a driveway, a sewer line, a lamp post, a sprinkler system, and a birdhouse. It is unlikely that setback rules were meant to prohibit such a wide variety of structures, especially when many of them, by their nature, are required to cross setback lines — like a driveway, for example. Therefore, we look to the text of the entire document for a more meaningful definition of "structure." See OCGA § 13-2-2 (4) (the whole contract should be looked to in arriving at the construction of any part).

We reviewed the covenants in their entirety, as the court below did, and found no consistent usage of the word "structure." Rather, it has various meanings in various contexts. In Section 11 (d) (i)-(vi) "structure" is used in a limited sense to refer to a house, building, dwelling, or any above-ground or "erected" shelters for people or property. Further, when other improvements to land are addressed in Section 11 (d), such as septic systems, sewage lines, wells, above-ground fuel and water tanks, and construction materials, they are discussed separately and only by their specific names. They are not referred to as "structures." Section 11 (d) (vii)-(ix). Given this context, we agree with the court below that "structure" was not intended to have a broader meaning. This is consistent with the well-recognized rule of construction that when a document lists by name several particular things, and concludes with a general term of enlargement, "[the] latter term is to be construed as being ejusdem generis[, i.e., of the same kind or class] with the things specifically named, unless, of course, there is something to show that a wider sense was intended." (Citations and punctuation omitted.) *Dept. of Transp. v. Montgomery Tank Lines*, 276 Ga. 105, 106, n. 5 (575 SE2d 487) (2003). Therefore, since a retaining wall is not in the same class of things as a house, garage, carport, playhouse, or outbuilding, Section 11 (d) (ii) does not prohibit its construction within the 20-foot side setback. Consequently, we find no error in the court's construction of the covenant.

2. The Association also contends that even if a retaining wall is not a structure, it was nevertheless entitled to summary judgment because the Powells failed to get written approval to build the retaining wall on their lot pursuant to Section 10 (a) of the covenants pertaining to Architectural Controls. Section 10 (a) (i) provides that no owner may "construct any dwelling or other improvement on a Lot"

without "first obtaining written approval of the Architectural Building Committee ('ABC')" of the Association. A retaining wall would qualify as an "improvement" to the Lot, given the broad meaning of the word "improvement" in the covenants. Further, Section 10 (a) (ii) provides that "[a]pplication for approval of any architectural modification shall be in writing and shall provide such information as the ABC may reasonably require."

> To prevail on a motion for summary judgment, the moving party must demonstrate that there is no genuine issue of material fact, and that the undisputed facts, viewed in a light most favorable to the party opposing the motion, warrant judgment as a matter of law. To obtain summary judgment, a defendant need not produce any evidence, but must only point to an absence of evidence supporting at least one essential element of the plaintiff's claim. Our review of a grant [or denial] of summary judgment is de novo, and we view the evidence and all reasonable inferences drawn from it in the light most favorable to the nonmovant.

(Footnotes omitted.) *West Coast Cambridge v. Rice*, 262 Ga. App. 106 (584 SE2d 696) (2003).

So viewed, the record shows the following. Ed Hoffman, the former chairman of the Association's ABC, approved and signed the Powells' "Request for Approval of Site and Architectural Plans" on January 8, 2004. While there is some evidence that the plans the Powells submitted for approval called for a driveway on the right side of the house (instead of the semi-circular drive initially drawn), there is no evidence that these initial plans specifically called for a retaining wall to support the driveway. The evidence supports an inference that the ABC approved the Powells' plans knowing they were incomplete and that the driveway and garage details were yet to be resolved. Further, it is undisputed that the Powells' lot is steeply sloped, as are others in the development, and that retaining walls have been used in conjunction with other homes in the past.

On February 11, 2004, the Powells broke ground on their home. They poured the foundations for the home on March 11, 2004 and poured the foundations for the driveway's retaining wall on March 19, 2004. At some point during construction, Dick Marshall replaced Hoffman as the ABC chairman. In his affidavit, Marshall admitted he visited the construction site on March 9, 2004, to discuss the driveway and that, during the visit, he "drew the compromised driveway directly on the plat and signed [his] approval and noted the date." Marshall denies approving a retaining wall. The Powells, however, dispute this.

The Powells contend they met with Marshall during the grading process on February 24, 2004, and that Marshall said a retaining wall would be needed to support the driveway given the steep slope of the lot. Based on that comment, the Powells spoke with their contractor, devised plans for a 32-foot retaining wall, drew it on the plat, and then mailed it to Marshall. Although an angled line, an arrow, and "32'" are noted on the plat next to the drawing of the modified driveway, the angled line is not specifically labeled "retaining wall." Nevertheless, the angled line does generally correspond with the location of the poured retaining wall foundation intended to support the driveway. The Association has offered no other logical explanation for the angled line, and Marshall does not deny that the line was present on the plat when he signed it: "Approved 3-9-04 D. Marshall."[1]

Another ABC representative, Pam Anderson, inspected the property several times between March 19 and 31, 2004. She gave the Powells no indication that she had any concern about the retaining wall until a neighbor complained about the wall in early April. Anderson denies having any knowledge of the retaining wall. The ABC issued a stop work order on April 8, 2004 and then, after attempts to resolve the dispute failed, began fining the Powells $25 per day for maintaining a wall which ABC contended "was built without the approval of the ABC and within the 20-foot side setback area."

Given this evidence, the trial court did not err in denying the Association's motion for summary judgment. The record contains documentary evidence from which a jury could infer that the ABC, through its chairman, Marshall, approved the Powells' written request for a modification of their original, approved plans, and that the new, approved plan called for a retaining wall to support the "compromised driveway." A jury may also find support for the Powells' position given evidence of the Association's conduct: It allowed construction on the Powells' home to be approved even though the plans were incomplete with respect to the garage and driveway. The Powells' lot is steeply sloped, as are others in the neighborhood that have required retaining walls; consequently, a retaining wall would not have been unforseen. The ABC, which inspected the premises after the wall's foundations were poured, did not object to the wall until a neighbor complained. And, as the court below concluded, the

---

[1] In its brief, the Association contends that the arrow and "32'" were on the plat submitted to it on January 8, 2004, arguing that "these markings do not refer to any 'proposed' retaining wall, but to something else entirely." While there is another plat in the record noting an arrow and a "32'," that drawing does not contain the angled line nor does it indicate when or by whom those hand-drawn markings were made; consequently, it does not conclusively disprove the Powells' argument.

Association may have taken the position that the wall was unauthorized based on its mistaken belief that the setback rules prohibited it. Because issues of fact remain for jury resolution, the court did not err in denying the Association's motion for summary judgment.

3. The Association contends the trial court erred in allowing the Powells to file an amended complaint to add claims they did not present to the court before the parties filed their summary judgment motions. On July 29, 2005, the Powells filed their Amended and Restated Complaint. Although the court had entertained oral argument on the parties' motions for summary judgment by then, it had not yet ruled. The record contains no pretrial order.

"A party may amend his pleading as a matter of course and without leave of court at any time before the entry of a pretrial order." OCGA § 9-11-15 (a). Since there was no pretrial order in this case, the Powells' motion for leave to file the amended complaint was superfluous; moreover, it would have been an abuse of discretion for the court to deny it under these circumstances. *Bandy v. Hosp. Auth. of Walker County*, 174 Ga. App. 556, 556-557 (1) (a) (332 SE2d 46) (1985). Further, that the trial court entertained motions for summary judgment does not prohibit the Powells from amending. The rule is that a plaintiff may not amend his complaint *after* the *grant* of summary judgment because the plaintiff has an obligation to present his case in full in opposing the summary judgment motion or run the risk of an adjudication against him. *Summer-Minter & Assoc. v. Giordano*, 231 Ga. 601, 605 (203 SE2d 173) (1973); *Crown Andersen, Inc. v. Ga. Gulf Corp.*, 251 Ga. App. 551, 553 (1) (b) (554 SE2d 518) (2001). Because summary judgment was not granted in the Association's favor, the rule does not act to bar the amendment. Consequently, the trial court did not err in entering an order allowing the amendment. We find no error.

*Judgment affirmed. Johnson, P. J., and Miller, J., concur.*

DECIDED SEPTEMBER 12, 2006 —

Restrictive covenants. White Superior Court. Before Judge Barrett.

*Weissman, Nowack, Curry & Wilco, Jason A. LoMonaco, Derek W. Johanson*, for appellant.

*Stewart, Melvin & Frost, Frank Armstrong III*, for appellees.