A07A1692. GLISSON v. IRHA OF LOGANVILLE, INC.
(656 SE2d 924)

RUFFIN, Judge.

IRHA of Loganville, Inc. ("IRHA"), a nonprofit corporation representing the homeowners of Ivy Ridge subdivision, brought a complaint for equitable relief and injunction against Deborah Glisson, who owns a home in Ivy Ridge, alleging that she violated the subdivision's restrictive covenants by erecting a shed on her property. After a bench trial, the trial court found in favor of IRHA, enjoining Glisson from maintaining the structure. Glisson appeals and, for reasons that follow, we affirm.[1]

---

[1] This appeal was originally filed in the Supreme Court, but was transferred to this Court because the Supreme Court found that the request for equitable relief did not trigger its jurisdiction over equity cases.

We review a trial court's grant of a permanent injunction under an abuse of discretion standard; however, "[w]here the issue decided is one of law, not fact, then the plain legal error standard of review applies."[2] The parties do not dispute the underlying facts. Glisson built a fenced dog pen with a metal roof on her property. The property is subject to restrictive covenants, including the following:

> The exterior of any permanent storage building erected shall be constructed with the same material and color as exterior of residence.

> No temporary house, shack, tent, motor home, or mobile home shall be erected or placed on said property.

> Each lot shall be landscaped and maintained by the owner who shall . . . erect no barns or sheds.

The president of IRHA received complaints about Glisson's dog pen from three neighbors. An attorney for IRHA notified Glisson in writing that the "metal building" on her property was in violation of the subdivision covenants and demanded that it be removed within 30 days. Glisson refused, contending that the structure does not violate the covenants, and this action followed.

The trial court concluded that the structure was a "shed" within the meaning of the restrictive covenants and thus enjoined Glisson "from maintaining the subject shed on her property," ordering her to remove it within two weeks. Glisson alleges that the trial court erred in failing to apply the appropriate legal principles in construing the covenants and in failing to find that the covenants were unenforceable due to IRHA's arbitrary and capricious enforcement of them.

1. In three related enumerations of error, Glisson asserts that the trial court improperly applied the rules of contract construction to the covenants. We disagree. Restrictive covenants are specialized contracts running with the land, and we apply the following rules of construction in interpreting them:

> Initially, construction is a matter of law for the court. First, the trial court must decide whether the language is clear and unambiguous. If it is, the court simply enforces the contract according to its clear terms; the contract alone is looked to for its meaning. Next, if the contract is ambiguous in some

[2] *Black Island Homeowners Assn. v. Marra*, 274 Ga. App. 265, 266 (1) (617 SE2d 148) (2005).

respect, the court must apply the rules of contract construction to resolve the ambiguity. Finally, if the ambiguity remains after applying the rules of construction, the issue of what the ambiguous language means and what the parties intended must be resolved by a jury or other factfinder. The existence or nonexistence of an ambiguity is a question of law for the court. If the court determines that an ambiguity exists, however, a jury question does not automatically arise, but rather the court must first attempt to resolve the ambiguity by applying the rules of construction in OCGA § 13-2-2.[3]

Glisson does not challenge the trial court's conclusion that the term "shed" as used in the covenants is ambiguous; rather, she objects to the definition adopted by the trial court in resolving the ambiguity. The trial court applied the rule of contract construction that "[w]ords generally bear their usual and common signification"[4] and adopted the definition of "shed" found in the American Heritage Dictionary of the English Language, 4th Edition: " '[a] small structure, either freestanding or attached to a larger structure, serving for storage or shelter.' " Glisson argues that the trial court could have chosen from other definitions, some of which do not use the term "small." Glisson does not, however, demonstrate how the choice of another definition of "shed" would have changed the outcome in this case. And we agree with the trial court "that the structure in dispute is a 'shed' within the common meaning of that term and within the meaning of the covenant."[5]

Glisson also argues that the trial court erred in failing to resolve any doubts as to the construction of the covenants in favor of the homeowner. It is a general rule in Georgia that restrictions on an owner's use of land "must be clearly established and must be strictly construed" and that any doubt as to restrictions on the use of land is construed in favor of the landowner.[6] But in applying this rule, a court must consider the entire document and attempt to give effect to the parties' intentions.[7] Here, the covenants prohibit any "temporary house, shack, tent, motor home, or mobile home" and require that any permanent storage building be constructed with the same materials and be the same color as the main residence. We agree with the trial

---

[3] (Punctuation omitted.) *Mitchell v. Cambridge Property Owners Assn.*, 276 Ga. App. 326, 326-327 (1) (623 SE2d 511) (2005).

[4] OCGA § 13-2-2 (2).

[5] See *Mitchell*, supra.

[6] (Punctuation omitted.) *Licker v. Harkleroad*, 252 Ga. App. 872, 874 (2) (a) (558 SE2d 31) (2001).

[7] See id. at 874-875.

court that the covenants, when read as a whole, evidence the parties' intent that any structure on the property must be consistent with the construction of the main residence. The structure at issue, consisting of a concrete pad, chain link fencing, and a metal roof, clearly is inconsistent with this intent. Accordingly, the trial court did not err in granting an injunction in favor of IRHA and ordering Glisson to remove the structure.[8]

2. Glisson argues that the trial court should have found that IRHA was not entitled to enforce the covenants against her because its enforcement was arbitrary and capricious. Glisson testified at trial that she had observed other violations of the covenants in the subdivision, although she had never complained about them to IRHA.[9] Glisson relies solely on *Southland Owners Assn. v. Myles*[10] in support of her argument. *Southland* is distinguishable, however, because in that case the homeowners' association had denied a homeowner's request to add a second driveway under a provision of the covenants stating that a request to alter a residence could be denied "on any ground consistent with the [covenants], 'including purely aesthetic considerations, so long as such grounds are not arbitrary or capricious.' "[11] The court in *Southland* was thus required to determine if the homeowners' association's decision was arbitrary and capricious because of requirements set forth in the covenants themselves.[12]

In the present case, where IRHA was enforcing a specific provision of the covenants rather than subjectively evaluating the "aesthetic considerations" of a project, the trial court properly treated Glisson's argument as one of waiver.[13] Waiver requires a showing that the homeowners' association received complaints about other similar violations and thus was on notice of them, yet did not act.[14] As there was no evidence that IRHA had received complaints about any other violations of the covenants that it failed to address, we agree with the trial court that IRHA has not waived its right to enforce the covenants nor is it estopped from enforcing them.[15]

*Judgment affirmed. Blackburn, P. J., and Bernes, J., concur.*

---

[8] See *Elite Realty Svcs. v. City of Auburn*, 272 Ga. 195, 196 (528 SE2d 236) (2000).

[9] The president of IRHA testified that the association would not act on a violation of the covenants until it received a complaint.

[10] 252 Ga. App. 522 (555 SE2d 530) (2001).

[11] Id.

[12] See id. at 523-524 (1).

[13] See *Bryan v. MBC Partners*, 246 Ga. App. 549, 551 (1) (541 SE2d 124) (2000).

[14] See id.

[15] See id.; *Byrd v. Wylly Island Homeowners' Assn.*, 277 Ga. App. 218, 220 (2) (626 SE2d 126) (2006).

DECIDED JANUARY 25, 2008.

*David S. Walker, Jr.*, for appellant.
*Michael J. Puglise, Michael R. Jones, Sr.*, for appellee.