**FOURTH DIVISION**
**DILLARD, C. J.,**
**DOYLE, P. J., and MERCIER, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 20, 2018**

# In the Court of Appeals of Georgia

A18A0241. GILBERT et al. v. CANTERBURY FARMS, LLC et al.    DO-008

A18A0242. TIME PROPERTIES, LLC v. GILBERT et al.           DO-009

A18A0243. CANTERBURY FARMS, LLC v. GILBERT et al.          DO-010

DOYLE, Presiding Judge.

Richard Gilbert, Fred Lovell, Jr., and Aaron Smith (collectively, "the plaintiffs") are property owners within a subdivision in Columbia County known as "Old Farm." After Canterbury Farms, LLC, bought a parcel of land ("the Property") within Old Farm, the plaintiffs sued Canterbury Farms, alleging that it was violating certain Old Farm protective covenants regarding clearing and planned construction on the Property. Canterbury Farms filed counterclaims and a third-party complaint against all owners in the Old Farm subdivision, including Time Properties, LLC. Following a bench trial, the trial court entered a final order finding that although the

Old Farm protective covenants are valid under OCGA § 44-5-60, they are invalid as applied to Canterbury Farms because the plaintiffs' delay in bringing the action severely prejudiced Canterbury Farms. In Case No. A18A0241, the plaintiffs appeal, arguing that trial court erred by concluding that the protective covenants are invalid as to Canterbury Farms and by denying their requests for attorney fees and expenses under OCGA § 13-6-11 and for injunctive relief. In Case No. A18A0242, Time Properties appeals, arguing that the trial court erred by determining that the protective covenants are valid. Canterbury Farms cross-appeals in Case No. A18A0243, arguing that the trial court erred by determining that the protective covenants are valid and could renew. We have consolidated these appeals for review. For the reasons that follow, we affirm in Case Nos. A18A0242 and A18A0243; in Case No. A18A0241, we reverse in part, vacate in part, and remand.

"[When] reviewing a judgment entered in a bench trial, we construe the evidence in favor of the judgment[,] and the court's factual findings will not be disturbed when supported by any evidence. We owe no deference, however, to the court's legal analysis[,] which is subject to de novo review."[1]

---

[1] (Punctuation omitted.) *Wright v. Piedmont Property Owners Assn.*, 288 Ga. App. 261, 262 (653 SE2d 846) (2007).

The undisputed facts show that the plaintiffs are property owners and members of the governing body of Old Farm. Old Farm covers approximately 127 acres, consisting of fewer than 15 large residential lots, which average approximately 10 acres each. The neighborhood is heavily wooded, includes ponds, streams, and horses, and is accessed by a private dirt road.

On May 17, 1990, protective covenants were executed and filed with the Columbia County Superior Court Clerk, which covenants applied to and ran with all real property contained within Old Farm. The covenants prohibit, without prior approval by the Old Farm Control Committee, cutting of trees more than three inches in diameter at one foot above ground and the subdivision of any tract such "that the total area is reduced by more than . . . 1/20th . . . of its original size." Paragraph 15 of the protective covenants provides that the covenants are binding upon all successors in title for an initial period of 20 years and "will automatically be renewed for successive 10[-]year periods unless abolished or amended as provided in paragraph 10 hereinbefore." Paragraph 10 prohibits the cutting of trees. Paragraph 14, however, provides: "These covenants may be amended in whole or part by a written document signed by the owners of at least two-thirds (2/3) of the subdivided tracts

. . . and recorded in the Columbia County Clerk's Office." It is undisputed that the protective covenants have not been abolished or amended.

Adjacent to Old Farm is Canterbury Farms, a much newer neighborhood consisting of high-volume, high-density housing, including townhouses. On May 15, 2015, Canterbury Farms purchased the Property, a ten-acre tract, from Old Farm with the intention of developing it as an extension of the Canterbury Farms neighborhood. The warranty deed states that the Property was "subject to" the protective covenants.[2] Canterbury Farms intended to construct buildings, fences, walls, and/or other structures on the Property and planned to subdivide it into multiple tracts without prior approval of the Old Farm Control Committee. Prior to suit, Canterbury Farms cut trees on the Property, and it intended to cut additional trees with a diameter greater than three inches, also without approval.

On January 22, 2016, the plaintiffs filed suit against Canterbury Farms, seeking: a declaratory judgment that the Old Farm protective covenants were valid and enforceable, had renewed, and precluded Canterbury Farm's planned development of the Property; permanent injunctive relief; damages; and attorney fees

---

[2] The parties later stipulated that Canterbury Farms purchased the Property "pursuant to an opinion of counsel that the Protective Covenants did not apply."

4

and expenses of litigation pursuant to OCGA § 13-6-11. Canterbury Farms filed an answer and asserted counterclaims and a third-party complaint against all owners in the Old Farm subdivision, including Time Properties, seeking a declaratory judgment invalidating the protective covenants and attorney fees.[3]

During litigation, the parties entered into multiple stipulations, including that "[t]he 1990 version of OCGA § 44-5-60 [] effective March 28, 1990[,] was in effect when the [p]rotective [c]ovenants were recorded[, and] . . . is the applicable statute to the [p]rotective [c]ovenants at issue." They further stipulated that Old Farm "has never followed the procedures for renewal of protective covenants as set forth in the 1990 version of OCGA § 44-5-60," and "Old Farm has never taken any action to abolish or amend the [p]rotective [c]ovenants." Finally, the parties stipulated that "Columbia County adopted zoning laws in or about 1979."

After a bench trial, the trial court entered a final order, concluding that

while the Declaration of Protective Covenants for the Old Farm Neighborhood filed May 17, 1990[,] with the Clerk of Superior Court

---

[3] On August 3, 2016, Columbia County was added as a party for the purpose of setting aside a December 1, 2015 conveyance of 0.47 acres of the Property from Old Farm to the County for storm water maintenance purposes. The County filed an answer stating that it had no objection to jurisdiction or venue in this action, but it did not present evidence or argument at trial, and it has not appealed.

of Columbia County are valid under OCGA § 44-5-60 as interpreted by *Turtle Cove Property Owners Assn. v. Jasper County*,[4] such protective covenants are invalid as applied to Defendants Canterbury Farms, LLC[,] and Columbia County. . . . Plaintiffs' delay in bringing this action, while Defendants obtained permits, erected fencing, graded sections of the property, and cleared the ten-acre property of trees, would result in severe prejudice to Defendants, who relied on the belief that such protective covenants were no longer valid by operation of OCGA § 44-5-60.

These appeals followed.

*Case No. A18A2042*

1. Canterbury Farms contends that the trial court's finding that the Old Farm protective covenants could automatically renew violates OCGA § 44-5-60 (1990), which it argues prohibits automatic renewal of such covenants in subdivisions containing fewer than 15 lots ("small subdivisions"). We disagree.

Former OCGA § 29-301 (now substantially OCGA § 44-5-60 (b)) provided that covenants restricting lands could run only for 20 years in municipalities and

---

[4] 255 Ga. App. 560 (566 SE2d 368) (2002).

6

counties where zoning ordinances had been enacted.[5] In 1990, OCGA § 44-5-60 was amended to add subsection (d), which provided:

> (1) Notwithstanding the limitation provided in subsection (b) of this Code section, *covenants restricting lands to certain uses affecting planned subdivisions containing no fewer than 15 individual plots may be continued beyond 20 years as provided in this subsection.* Each such continuation shall continue for 20 years, and there shall be no limit on the number of times such covenants may be continued.
>
> (2) *To continue a covenant as provided in paragraph (1) of this subsection, at least two-thirds of the record owners of plots affected by such covenant shall execute a document containing a legal description of the entire area affected by the covenant, a list of the names of all record owners of plots affected by the covenant, and a description of the covenant to be continued, which may be incorporated by reference to another recorded document.* Such document, together with the affidavit of an attorney licensed to practice in this state stating that he has searched the land records and has verified the names of the record owners appearing in the document, shall be recorded in the office of the clerk of the superior court of the county where the land is located prior to the expiration of the initial 20 year period or any subsequent 20 year extension. No such covenant shall be renewed after the lapse of time of such initial period or extension. The clerk of the superior court shall

---

[5] See *Rowland v. Kellos*, 236 Ga. 799 (1) (225 SE2d 302) (1976), citing 1962 Ga. L. p. 540 & 1935 Ga. L. p. 112.

7

index the document under the name of each record owner appearing in the document.

(3) No covenant that prohibits the use or ownership of property within the subdivision may discriminate based on race, creed, color, age, sex, or national origin.

(4) Notwithstanding any other provision of this Code section or of any covenants with respect to the land, no change in the covenants which imposes a greater restriction on the use or development of the land will be enforced unless agreed to in writing by the owner of the affected property at the time such change is made.[6]

Canterbury Farms argues that by adding subsection (d) to the 1990 version of OCGA § 44-5-60, which the parties agree is applicable to this case, the legislature prohibited the automatic renewal of protective covenants in "small subdivisions" in those counties and municipalities with zoning laws, instead permitting automatic renewal only in "large subdivisions" — those with 15 lots or more — for which relevant documents have been executed and recorded in the method required by OCGA § 44-5-60 (d) (2). Pretermitting whether this distinction is a proper

_____

[6] (Emphasis supplied).

8

interpretation of that Code section, OCGA § 44-5-60 (1990) does not render unenforceable the Old Farm covenants at issue in this case.

In *Sweeney v. Landings Assn.*,[7] the Supreme Court of Georgia explained:

OCGA § 44-5-60 (b) only provides that covenants restricting lands to certain uses will run only for 20 years in cities and counties subject to zoning laws. *Neither that statute nor any other law limits the enforceability of covenants to only a single 20-year term or precludes their eventual renewal upon the expiration of that period. Here, the covenants expressly provide that, after 20 years, they will renew automatically at successive 10-year intervals unless two-thirds of the residents objected. This provision is valid and enforceable as a matter of contract law.*[8]

And as this Court held in *Turtle Cove Property Owners*:

[t]here is nothing in the governing statute, OCGA § 44-5-60, which prohibits the automatic renewal of covenants. On the contrary, the public policy evidenced by the automatic renewal provision of OCGA § 44-5-60 (d) clearly favors the automatic renewal of covenants. And we know of no other law or public policy that is contravened by the . . . renewal provision [at issue]. Accordingly, we find that the . . . provision

_____

[7] 277 Ga. 761, 761-762 (1) (595 SE2d 74) (2004).

[8] (Citations omitted; emphasis supplied.) Id., citing *Turtle Cove*, 255 Ga. App. at 562, *Bowman v. Walnut Mountain Property Owners Assn.*, 251 Ga. App. 91, 92 (1) (553 SE2d 389) (2001).

9

for automatic renewal of the covenants for 15-year terms, unless two-thirds of the property owners agree to terminate or modify the covenants, is not contrary to law or public policy.[9]

Here, the parties agree that the Old Farm protective covenants have never been abolished. And "[b]ecause the covenants themselves provide for their automatic renewal, the question of . . . application of the principle of statutory automatic renewal pursuant to OCGA § 44-5-60 (d) does not arise."[10] Accordingly, this enumeration is without merit.

*Case No. A18A0243*

2. Time Properties argues that the trial court erred by finding that the automatic renewal provision of the protective covenants was enforceable under OCGA § 44-5-60. As we held in Division 1, this argument is meritless.

3. Time Properties further contends that the Old Farm protective covenants are vague, invalid ab initio, and unenforceable, pointing out two alleged ambiguities. We find no basis for reversal.

---

[9] (Footnote omitted.) *Turtle Cove Property Owners*, 255 Ga. App. at 562, citing *Bowman*, 251 Ga. App. at 93 (1).

[10] *Sweeney*, 277 Ga. at 762 (1) (holding that the issue of whether statutory automatic renewal under OCGA § 44-5-60 (d) applied retroactively was irrelevant because the covenants at issue provided for automatic renewal).

Restrictive covenants are specialized contracts that run with the land. As with other contracts, the interpretation of restrictive covenants is a three-step process. Initially, construction is a matter of law for the court. First, the trial court must decide whether the language is clear and unambiguous. If it is, the court simply enforces the contract according to its clear terms; the contract alone is looked to for its meaning. Next, if the contract is ambiguous in some respect, the court must apply the rules of contract construction to resolve the ambiguity. Finally, if the ambiguity remains after applying the rules of construction, the issue of what the ambiguous language means and what the parties intended must be resolved by a jury or other factfinder. The existence or nonexistence of an ambiguity is a question of law for the court. If the court determines that an ambiguity exists, however, a jury question does not automatically arise, but rather the court must first attempt to resolve the ambiguity by applying the rules of construction in OCGA § 13-2-2.[11]

(a) Time Properties argues that the covenants are ambiguous because paragraph 15 provides for automatic renewal "unless abolished or amended as provided in [p]aragraph 10," but paragraph 10 prohibits the cutting of trees and does not address abolishment or amendment. Paragraph 14, however, provides: "These covenants may be amended in whole or part by a written document signed by the owners of at least

---

[11] (Citation and punctuation omitted.) *Skylake Property Owners Assn. v. Powell*, 281 Ga. App. 715, 716 (1) (637 SE2d 51) (2006), quoting *Mitchell v. Cambridge Property Owners Assn.*, 276 Ga. App. 326, 326-327 (1) (623 SE2d 511) (2005).

two-thirds (2/3) of the subdivided tracts . . . and recorded in the Columbia County Clerk's Office."

"Even ambiguous contracts are to be construed by the court unless an ambiguity remains after application of applicable rules of construction. . . . One of those rules is that a scrivener's error should not be permitted to defeat the clear intention of the parties, as otherwise evidenced by the entirety of the contract."[12] Here, "[c]onsidering the [restrictive covenants] as a whole, it is apparent that [the reference to paragraph 10 in paragraph 15 in lieu of referring to paragraph 14] constitutes no more than an inadvertent and superfluous error on the part of the drafter."[13]

(b) Time Properties argues that the covenants are ambiguous and unenforceable because they do not provide for a procedure for abolishment. We disagree.

As stated previously, paragraph 15 provides for automatic renewal "unless abolished or amended as provided in paragraph 10," and as we held in Division 2 (a), the parties intended that paragraph 15 refer to paragraph 14, which specified the

---

[12] (Punctuation and citation omitted.) *Benedict v. Snead*, 271 Ga. 585, 586 (519 SE2d 905) (1999), quoting *Travelers Ins. Co. v. Blakey*, 255 Ga. 699, 700 (342 SE2d 308) (1986) & citing *Tillman v. Webb & Co.*, 17 Ga. App. 620 (87 SE 904) (1916).

[13] *Benedict*, 271 Ga. at 586.

procedure for amending the covenants. An abolishment of the covenants would constitute an amendment.[14] Therefore, the procedure set forth in the covenants requiring amendment by a recorded, written document signed by owners of 2/3 of the lots encompasses abolishment.

*Case No. A18A0241*

3. The plaintiffs argue that the trial court erred by concluding that the protective covenants do not apply to Canterbury Farms because it was prejudiced by the plaintiffs' delay in filing suit. We agree.

Specifically, the plaintiffs contend that the trial court's application of the doctrine of laches to bar their claims was erroneous because (a) Canterbury Farms failed to raise the affirmative defense of laches as required by OCGA § 9-11-8 (c); (b) Canterbury Farms failed to present evidence or argument to support a finding of laches; and (c) the laches finding exceeded the parties' stipulations. In response, Canterbury Farms contends that the trial court did not state specifically that its findings were based on laches, arguing that the trial court's conclusion indicated a

---

[14] Black's Law Dictionary (9th ed. 2009) defines "amendment" as "[a] formal revision or addition proposed or made to a statute, constitution, pleading, order, or other instrument; specif., a change made by addition, deletion, or correction; esp., an alteration in wording."

13

finding of "waiver, estoppel[,] and unclean hands," affirmative defenses that Canterbury Farms did raise in its answer.

Pretermitting whether Canterbury Farms asserted the relevant affirmative defense or whether the finding improperly exceeds the parties' stipulations, the evidence does not support the trial court's conclusion that the plaintiffs' delay in filing suit bars their claims.

As previously stated, following the bench trial, the trial court concluded that although the Old Farm restrictive covenants are valid under OCGA § 44-5-60, they

> are invalid as applied to Defendants Canterbury Farms, LLC[,] and Columbia County. . . . Plaintiffs' delay in bringing this action, while Defendants obtained permits, erected fencing, graded sections of the property, and cleared the ten-acre property of trees, would result in severe prejudice to Defendants, who relied on the belief that such protective covenants were no longer valid by operation of OCGA § 44-5-60.

Although the order does not specifically characterize its conclusion as a finding of laches, the language of the order implies such a finding. OCGA § 9-3-3 provides that "courts of equity may interpose an equitable bar whenever, from the lapse of time and laches of the complainant, it would be inequitable to allow a party to enforce his

legal rights." And the language of the order tracks the elements of a laches defense: "To establish the affirmative defense of laches, [a defendant must] come forward with evidence showing inexcusable delay and prejudice resulting therefrom."[15]

Assuming, therefore, that the trial court found laches, such a finding is wholly unsupported by the evidence. A

> trial court may bar a complaint based on laches when the lapse of time and the claimant's neglect in asserting rights results in prejudice to the adverse party. Whether laches should apply depends on a consideration of the particular circumstances, including such factors as the length of the delay in the claimant's assertion of rights, the sufficiency of the excuse for the delay, the loss of evidence on disputed matters, the opportunity for the claimant to have acted sooner, and whether the claimant or the adverse party possessed the property during the delay. Laches is not merely a question of time, but principally the question of the inequity in permitting the claim to be enforced. Courts should consider all the facts presented when balancing the equities to determine which party's rights are superior.[16]

---

[15] *Harvey v. Bank One, N.A.*, 290 Ga. App. 55, 58 (2) (658 SE2d 824) (2008), citing *Grant v. Fourth Nat. Bank of Columbus*, 229 Ga. 855, 868 (7) (a) (194 SE2d 913) (1972).

[16] (Citation and punctuation omitted.) *Waller v. Golden*, 288 Ga. 595, 597-598 (1) (706 SE2d 403) (2011), quoting *Hall v. Trubey*, 269 Ga. 197, 199 (1) (498 SE2d 258) (1998) & citing *Cantrell v. Henry County*, 250 Ga. 822, 826 (2) (301 SE2d 870) (1983).

Here, the only evidence presented was the stipulations of the parties, the testimony of an expert arborist who testified regarding the trees needed to reforest the property, and testimony of the plaintiffs' counsel regarding fees.[17] The stipulations included that Canterbury Farms had cut trees and planned to cut additional ones on the Property without obtaining prior approval of the Old Farm Control Committee. There was no evidence, however, regarding: when the plaintiffs first learned about Canterbury Farms's violations of the protective covenants; when Canterbury Farms began clearing the Property; the timing of any grading or erection of fencing on the Property; the plaintiffs' efforts, or lack thereof, to stop or object to the tree clearing and development prior to suit; or specific harm resulting from any alleged delay by the plaintiffs in filing suit or otherwise objecting to Canterbury Farms's actions,

---

[17] The parties previously filed cross-motions for summary judgment on the substantive issues. At the summary judgment hearing, counsel for Canterbury Farms and the plaintiffs advised the trial court that the relevant issues were legal ones, not factual, and that the trial court could rule on the rights and obligations between the parties. The trial court, however, denied the summary judgment motions without explanation. At the subsequent bench trial, the two witnesses testified, and the parties tendered their stipulations; although there were photographs of the Property attached to the stipulations, counsel for the parties agreed that all recent photographs of the Property showing its current condition were taken after litigation commenced. Counsel then made legal arguments regarding whether the protective covenants were enforceable or had expired under OCGA § 44-5-60. Neither party presented evidence or argument regarding laches or to otherwise demonstrate or dispute that Canterbury Farms was prejudiced by the plaintiffs' delay in filing suit.

16

attempting to enforce the covenants, or preserve their rights and remedies. Under these circumstances, the record does not support a finding of laches.[18] Thus, we reverse that portion of the trial court's order finding that the covenants are invalid as applied to Canterbury Farms and Columbia County.

4. The plaintiffs contend that the trial court erred by failing to grant them injunctive relief. We agree.

The trial court denied the plaintiffs' request for injunctive relief because it found that the covenants are invalid as applied to Canterbury Farms and Columbia County. As we concluded in Divisions 1, 2, and 3, the restrictive covenants are valid, and laches and waiver do not bar their application to Canterbury Farms in this case.

---

[18] See, e.g., *SRB Investment Svcs., LLLP v. Branch Banking & Trust Co.*, 289 Ga. 1, 7-8 (3) (b) (709 SE2d 267) (2011); *100 Trail Trust v. Bank of America, N.A.*, 342 Ga. App. 762, 765-766 (1) (804 SE2d 719) (2017); *915 Indian Trail, LLC v. State Bank & Trust Co.*, 328 Ga. App. 524, 531-532 (2) (759 SE2d 654) (2014) (physical precedent only). The same failure of proof precludes a finding of waiver, which "is essentially a matter of intent based upon full knowledge of all the material facts, and the evidence relied upon to prove a waiver must be so clearly indicative of an intent to relinquish a then known particular right or benefit as to exclude any other reasonable explanation." *Wyndham Lakes Homeowners Assn., Inc. v. Gray*, 303 Ga. App. 45, 48 (2) (692 SE2d 704) (2010) (punctuation omitted).

Accordingly, we reverse the trial court's denial of the plaintiffs' request for injunctive relief and remand the case for consideration of this issue in light of this opinion.[19]

5. The plaintiffs also argue that the trial court erred by denying their claim for attorney fees and expenses of litigation. Again, we agree.

The trial court denied the plaintiffs' claims for attorney fees, presumably based on its conclusion that their claims were barred by laches. Based upon our holdings in Divisions 1, 2, and 3, we vacate this portion of the trial court's order and remand for reconsideration of the plaintiffs' claims for attorney fees in light of this opinion.[20]

*Judgments affirmed in Case nos. A18A0242 and A18A0243. Judgment reversed in part, vacated in part, and case remanded in Case no. A18A0241. Dillard, C. J., and Mercier, J., concur.*

---

[19] See *Hall*, 269 Ga. at 197-200 (1) (498 SE2d 258) (1998) (reversing trial court's denial of plaintiff's claim for injunctive relief based on application of the doctrine of laches to bar plaintiff's claim against defendant for developing adjacent property); *King v. Baker*, 214 Ga. App. 229, 233-234 (3) (447 SE2d 129) (1994) (affirming trial court's grant of the plaintiffs' claim for injunctive relief based upon the defendants' violation of restrictive covenants).

[20] See *King*, 214 Ga. App. at 234-235 (4) (affirming OCGA § 13-6-11 attorney award to the plaintiffs in their claim for equitable relief based on the defendants' violation of restrictive covenants)