## A01A1301. BOWMAN v. WALNUT MOUNTAIN PROPERTY OWNERS ASSOCIATION, INC.
### (553 SE2d 389)

ELDRIDGE, Judge.

William Bowman, Jr., as a tenant at will of property owned by Ridgehaven Homes, Inc. in the Walnut Mountain Subdivision, appeals the dismissal for lack of standing of his complaint against Walnut Mountain Property Owners Association, Inc. seeking declaratory judgment and damages as to the Covenants, Conditions, and Restrictions for the Walnut Mountain Subdivision. Ridgehaven Homes ("Ridgehaven") appeals the trial court's finding in such action that all of the land that it owns is subject to the covenants, conditions, and restrictions as recorded in Deed Book 48, page 472, Gilmer County real property records and "as subsequently amended or supplemented the deeds to Ridgehaven Homes, Inc., having made said covenants and conditions a part of said deeds" in Deed Book 268, page 87. Bowman appeals the trial court's finding that Bowman's tenancy at will does not vest in him an estate with sufficient interest in the land to afford him standing to bring this action, because title to such land is in Ridgehaven. We affirm the trial court's findings as to both claims of error.

Bowman incorporated Ridgehaven to develop lots in the Walnut Mountain Subdivision after it had been subdivided subject to the covenants, conditions, and restrictions created by the owner. On various dates in 1995 and 1996, Ridgehaven received title to lots in the Walnut Mountain Subdivision with legal reference to Plat Book 4, page 43, and expressly subject to the covenants and restrictions of Walnut Mountain recorded in its deeds of Deed Book 48, page 472; Deed Book 50, page 491; Deed Book 75, pages 198, 225, and 469; and the renewal in Deed Book 268, page 87. The original grantor of these lots was the Ocmulgee Corporation, which created the covenants, conditions, and restrictions as covenants running with the land. Over five years after the renewal and extension of the covenants, conditions, and restrictions had been filed of record for another ten years, Ridgehaven took title to these lots under deeds expressly referencing such covenants.

On April 10, 1971, April 29, 1971, and April 8, 1977, the Ocmulgee Corporation made and filed of record the Declaration of Covenants, Conditions, and Restrictions of Walnut Mountain that subjected such land to these covenants running with the land.

The Walnut Mountain Property Owners Association, a not-for-profit corporation, is governed by a constitution and bylaws and administers such subdivision common areas.

On August 11, 1990, on behalf of its owner-members, Walnut Mountain Property Owners Association, through its president and attested to by its secretary, filed of record an agreement of renewal and extension of the Ocmulgee Corporation's covenants, conditions, and restrictions for Walnut Mountain from April 10, 1991, for ten years. This recordable agreement, which renewed and extended the covenants, stated that 68 percent of the lot owners had executed written consent agreements to the renewal and that such separate agreements were on file in its offices.

On July 30, 1998, Ridgehaven conveyed to Shelley Carter a lot by recorded deed which incorporated these covenants and made the lot subject to the covenants.

1. Ridgehaven contends that the trial court erred in finding that it was subject to the covenants, because the covenants were not properly renewed as provided under the covenants for renewal and extension, and the original covenants had expired as a matter of law. We do not agree.

Article IX of the Declaration of Covenants, Conditions, and Restrictions of Walnut Mountain provided that it was a covenant running with the land for a period of twenty years and could be renewed in successive ten-year periods under its renewal and extension procedure:

> if an agreement of renewal and extension is signed (a) by Declarant, if it is the owner of any lots then subject thereto, (b) by at least two thirds (2/3) of the Property Owners whose lots are then subject thereto, and (c) by the then owner of the Common Properties within Walnut Mountain. No such agreement of renewal and extension shall be effective unless filed for record at least one hundred eighty (180) days prior to the effective date of such renewal and extension.

On August 11, 1990, the renewal and extension was filed of record more than six months prior to its expiration date on April 10, 1991. The recorded agreement for renewal and extension was executed by the president and secretary of the Walnut Mountain Property Owners Association, the owner of the common areas, on behalf of the lot owners; the extension agreement recited that the sepa-

rately executed consent agreements of 68 percent of the lot owners had been obtained and were on file in its office, agreeing to the extension. This constituted an incorporation by reference of such separate consent agreements of 68 percent of the lot owners. In 1990, the Ocmulgee Corporation no longer owned any lots in the Walnut Mountain Subdivision. Thus, all of the conditions for a ten-year extension of the covenants had been satisfied.

(a) Ridgehaven contends that Article IX has not been complied with because, although sixty-eight percent of the property owners consented separately in writing to the renewal and extension of the covenant for ten years, all sixty-eight percent of the property owners consented improperly to the renewal and extension by separately signing agreements instead of executing one single agreement. Therefore, it contends that the intent of the property owners to extend the covenants, including Ridgehaven's grantors in title, has been frustrated and has no legal effect.

Ridgehaven relies upon *Canterbury Forest Assn. v. Collins*, 243 Ga. App. 425, 426-427 (1) (532 SE2d 736) (2000), which held that the property owners there had to strictly follow OCGA § 44-5-60 (d) (1) for an extension under the statute to be effective. While this is true of the statutory extension, here the renewal and extension procedure was part of the covenant running with the land, which provided for such renewal and extension, and the extension was by mutual written agreement between the property owners in reliance on the acts of each other. All owners took subject to the covenants being renewable under the covenants themselves.

Even if the statutory extension were not available, promissory estoppel would prevent Ridgehaven from now disavowing what its predecessors in title agreed to do and caused the other lot owners to mutually rely upon to their detriment. Ridgehaven's predecessors in title executed separate agreements without insisting that only one agreement of extension should be executed, causing the other lot owners to change positions to their detriment in not signing and filing a single agreement of renewal and extension. Thus, Ridgehaven, by taking title with the covenants of record specifically referencing the renewal and extension in its deeds, to which the predecessors in title agreed, became subject to promissory estoppel because of the actions of its grantors. *Canterbury Forest Assn. v. Collins*, supra at 427-428.

(b) In this case, the property owners carried out the exact terms and conditions of the recorded covenants under the renewal and extension procedures.

The meaning of the "agreement" required to be signed by two-thirds of the property owners on its face appears to be ambiguous within the clear meaning of the word, i.e., "agreement," makes it

unclear whether the property owners must each execute a single written agreement, can sign separate written agreements, or can incorporate by reference separate written agreements into one written renewal and extension agreement filed of record on their behalf by the property owners association.

The construction of the meaning of the language in a contract is a legal issue under the rules of contract construction. OCGA § 13-2-1; *Crooks v. Crim*, 159 Ga. App. 745, 748 (285 SE2d 84) (1981); *Andrews v. Skinner*, 158 Ga. App. 229, 230 (279 SE2d 523) (1981). "But a contract is not ambiguous, even where difficult to construe . . . unless and until an application of the pertinent rules of interpretation leaves it uncertain as to which of two or more possible meanings represents the true intention of the parties." (Citation omitted.) *Crooks v. Crim*, supra at 748. Where the language of the contract is plain, clear, and undisputed but the meaning of the language is in dispute, construction of such term is for the trial court to determine the meaning, and if after application of the rules of construction there exists no ambiguity, then the court has resolved as a matter of law any apparent ambiguity. *Travelers Ins. Co. v. Blakey*, 255 Ga. 699, 700 (342 SE2d 308) (1986); *Bd. of Regents &c. of Ga. v. A. B. & E., Inc.*, 182 Ga. App. 671, 673 (357 SE2d 100) (1987). The intent of the parties where clearly expressed controls over all technical or arbitrary rules of construction. OCGA § 13-2-3; *Olympic Dev. Group v. American Druggists' Ins. Co.*, 175 Ga. App. 425, 429 (2) (333 SE2d 622) (1985). Here, 68 percent of the lot owners expressly intended to exercise their rights to renew and extend the covenants protecting their lots in writing no matter what Ridgehaven as a subsequently acquiring grantee intended the language to mean; it was not a party to the mutual agreement, only a privy.

(c) Construction of contracts, like construction of statutes, seeks to carry out the intent of the parties, and in this case, the clear intent was to renew and extend the covenants to protect the property owners. Where, as here, the intention of the property owners is clear, unambiguous, and not in dispute and does not contravene any rule of law, their written agreements to extend the existing covenants under the procedure for renewal will be enforced according to its terms. OCGA § 13-2-3; *Budd Land Co. v. K & R Realty Co.*, 159 Ga. App. 448, 449 (2) (283 SE2d 665) (1981); *Crawford v. Crawford*, 158 Ga. App. 187, 188 (279 SE2d 486) (1981). Therefore, where there has been a substantial compliance with the terms and conditions of the covenant permitting renewal and extension, such substantial compliance sufficiently satisfies the procedure as in statutory construction. OCGA § 1-3-1 (c); *O'Neal v. Spencer*, 203 Ga. 588 (47 SE2d 646) (1948); *Moreton Rolleston, Jr. Living Trust v. Glynn County Bd. of Tax Assessors*, 240 Ga. App. 405 (523 SE2d 600) (1999); *Health Hori-*

*zons v. State Farm &c. Ins. Co.*, 239 Ga. App. 440 (521 SE2d 383) (1999). " 'Good faith' is a shorthand way of saying substantial compliance with the spirit, and not merely the letter, of a contract. *Crooks v. Chapman Co.*, 124 Ga. App. 718, 720 (185 SE2d 787) (1971)." *Fisher v. Toombs County Nursing Home*, 223 Ga. App. 842, 845-846 (2) (479 SE2d 180) (1996); see also OCGA § 13-4-20; *First Nat. Bank &c. v. Wynne*, 149 Ga. App. 811, 817 (1) (256 SE2d 383) (1979). When giving effect to the clear intent of the owners and the substantial purpose of the covenants and extension, the court will give effect to such overall scheme. *Friedman v. Friedman*, 259 Ga. 530, 532-533 (3) (384 SE2d 641) (1989), overruled on other grounds, *Duckworth v. State*, 268 Ga. 566 (492 SE2d 201) (1997).

Thus, the agreement filed of record can incorporate by reference the separately executed agreements of the 68 percent of the lot owners to constitute a unitary agreement to renew and extend the covenants to give effect to the property owners' written intent and purpose. A written agreement can be formulated from separate signed documents. *Bd. of Regents &c. of Ga. v. Tyson*, 261 Ga. 368, 369 (404 SE2d 557) (1991); *Baker v. Jellibeans, Inc.*, 252 Ga. 458, 460 (314 SE2d 874) (1984). A written and filed agreement may also incorporate by reference, as was done here, other documents by specific reference and identification so that such documents are treated as if a part of the document making the reference. "As a matter of contract law, incorporation by reference is generally effective to accomplish its intended purpose where the provision[s] to which reference is made [have] a reasonably clear and ascertainable meaning." *Goldman v. Vinson*, 244 Ga. App. 815, 817 (1) (535 SE2d 305) (2000); see accord *Town Center Assoc. v. Workman*, 227 Ga. App. 55, 57 (1) (487 SE2d 624) (1997). "There is here such a description because a deed incorporating a recorded plat by reference as the legal description has the same effect as if written out in the deed." *Jones v. Bowen*, 244 Ga. App. 300, 302 (535 SE2d 501) (2000); see also *Reidling v. Holcomb*, 225 Ga. App. 229, 231 (1) (483 SE2d 624) (1997). Thus, the Walnut Mountain Property Owners Association properly renewed and extended the covenants, even in the form of a single agreement.

(d) "When a grantee accepts a deed, he is bound by the covenants contained therein even though the deed has not been signed by him." OCGA § 44-5-39; *Hill v. Moye*, 221 Ga. App. 411, 413 (2) (471 SE2d 910) (1996). The owner of a fee in land has the right to convey his land subject to such reservations or restrictions in the form of covenants running with the land as he may impose, provided that such covenants are not contrary to public policy. *Cawthon v. Anderson*, 211 Ga. 77, 78 (1) (84 SE2d 66) (1954). Thus, restriction of use of the land conveyed may burden the land through the deed of title. *Winslette v. Keeler*, 220 Ga. 100, 101 (1) (137 SE2d 288) (1964). By accepting a

deed with covenants and restrictions, the grantee voluntarily consents to be bound by such covenants. Id. at 101. Thus, all of Ridgehaven's lots are subject to the renewed covenants, conditions, and restrictions.

2. Bowman contends that, although he has no ownership interest in any land in the Walnut Mountain Subdivision, as a tenant at will of Ridgehaven he has a direct interest in the property, giving him standing, and that the trial court erred in dismissing him from the suit. We do not agree, because Bowman is a mere tenant at will.

When a lessee has a lease agreement for five or more years, an estate for years passes to the lessee. OCGA § 44-7-1; *Roe v. Doe*, 246 Ga. 138, 140 (1) (268 SE2d 901) (1980); *Paces Partnership v. Grant*, 212 Ga. App. 621, 624 (1) (442 SE2d 826) (1994); *Searcy v. Peach County Bd. of Tax Assessors*, 180 Ga. App. 531 (349 SE2d 515) (1986). However, a tenant under a contract for less than five years has only a usufruct, which is the rights and privileges arising as a matter of law from the landlord-tenant relationship. See *Roe v. Doe*, supra at 138; *Sharpe v. Mathews*, 123 Ga. 794, 797-798 (2) (51 SE 706) (1905). Under a usufructuary interest, the tenant cannot sublet the premises, convey his usufructuary interest, nor assign his lease without the landlord's consent. *Hudson v. Stewart*, 110 Ga. 37, 38-39 (35 SE 178) (1900). A tenant at will is in possession by right which is evidenced by the will of the landlord, giving permission to the occupancy and the will of the tenant that is implied by possession of the premises; a 60-day notice to quit, as well as the emoluments of tenancy, arises. OCGA § 44-7-7; *Nicholes v. Swift*, 118 Ga. 922, 924-925 (1) (45 SE 708) (1903); *Carruth v. Carruth*, 77 Ga. App. 131, 134-135 (1) (48 SE2d 387) (1948).

In *Meco of Atlanta v. Super Valu Stores*, 215 Ga. App. 146, 147 (449 SE2d 687) (1994), relied upon by Bowman, the lessor leased the improved realty to the lessee for fifteen years with three additional five-year renewable terms, which created an estate for years in the lessee. Under such facts and circumstances, the lessee had standing to contest a materialman's lien foreclosure, because the lessee had an estate for years and not a mere usufructuary interest, as does Bowman. As a matter of law and fact, *Meco* is distinguishable from this case.

Although Bowman is the president and sole stockholder of Ridgehaven, he has no right to bring an action for injuries to the corporate entity, because such legal entity must sue in its own name. However, if the shareholder can show that he has suffered a "special injury" that allows a personal cause of action, he may proceed individually. Such is not the case here, and the trial court properly dismissed Bowman for lack of standing. See *Phoenix Airline Svcs. v. Metro Airlines*, 260 Ga. 584, 585-586 (1) (397 SE2d 699) (1990).

*Judgment affirmed. Miller, J., concurs. Andrews, P. J., concurs in judgment only.*

DECIDED AUGUST 6, 2001.

*Ray & McKinney, Robert M. Ray, Jr.,* for appellant.
*Weissman, Nowack, Curry & Wilco, Charles B. Waters, Jr., David E. Ralston,* for appellee.