## A11A0964. INTERCHANGE DRIVE, LLC et al.
## v. NUSLOCH et al.
(716 SE2d 603)

PHIPPS, Presiding Judge.

This case involves a dispute between subdivision lot owners and the purchaser of certain subdivision property. The lot owners sought access to common areas and a recreation area within the subdivision, and the purchaser denied such access, taking the position that it was entitled to use that property for its own purposes. The trial court ruled in favor of the lot owners, allowing them rights to use, access and enjoy the subdivision's common areas and recreation area as set forth on the subdivision plat and in the subdivision's restrictive

covenants.[1] The purchaser, Interchange Drive, LLC ("Interchange"), appeals the trial court's ruling in favor of the lot owners. Because the subdivision property at issue remained subject to the subdivision's restrictive covenants when Interchange purchased it, we affirm.

Interchange purchased the subdivision property at issue in 2009. To resolve the dispute in this case, however, we must review a series of real estate transactions between numerous entities, beginning in 2005.

On July 7, 2005, Genesis Real Estate Group, LLC ("Genesis") purchased two parcels of land from Erling Speer by warranty deed. That same day, Genesis executed a deed to secure debt and assignment of rents (the "security deed"), conveying those parcels to Wachovia Bank, National Association ("Wachovia"), as security for a loan. The security deed was recorded on July 13, 2005.

Genesis was the developer of Habersham Plantation subdivision. On December 13, 2005, Genesis recorded a plat for the subdivision. The plat showed subdivided lots, streets, areas designated "common area" and an "Active Recreation Area" (the "ARA"), located next to the Grove River. The plat stated that all common areas were to be maintained by the Habersham Plantation Homeowners Association (the "Association") and that future uses of the common areas and the ARA must be approved by the Association. For the common areas, such uses could include a swimming pool, pool house, tennis courts, and walking trails; for the ARA, such uses could include a river clubhouse with kitchen facilities and dock.

On December 15, 2005, Genesis, as declarant, recorded the Declaration of Covenants, Conditions and Restrictions for Habersham Plantation (the "Habersham Covenants"). The land initially subjected to the Habersham Covenants included Lots 1-11 and 21-55 of the subdivision, and Genesis reserved the right to subject additional subdivision property to the Habersham Covenants by recording a supplemental declaration describing the property being subjected. The Habersham Covenants defined such a "Supplemental Declaration" as "[a]n instrument recorded pursuant to Article IX which subjects additional property to this Declaration, and/or imposes additional restrictions and obligations on the land described in this instrument."

The Habersham Covenants defined a "Common Area" as "[a]ll real and personal property, including easements, which the Association owns, leases or otherwise holds possessory or use rights in for

---

[1] The lot owners also sought summary judgment under an agreement with the owner of adjacent property regarding a proposed boat ramp easement, but the trial court denied relief on that issue and that denial has not been appealed.

the common use and enjoyment of the Owners." The Habersham Covenants held the Association "responsible for management, operation, and control of the Common Area." Also within the Habersham Covenants, Genesis, as declarant, granted each owner a "nonexclusive right and easement of use, access, and enjoyment in and to the Common Area."

On October 1, 2006, Genesis quitclaimed its interests in the Habersham Plantation property and assigned its rights as declarant under the Habersham Covenants to Genesis At Habersham, LLC. The quitclaim deed and assignment were recorded on November 13, 2006.

On December 31, 2007, Genesis At Habersham recorded a Declaration of Covenants, Conditions, and Restrictions for Common Areas of Habersham Plantation Subdivision to clarify that the ARA was a common area, as defined in the Habersham Covenants, and to expressly prohibit the development of the ARA and the adjoining salt marsh and the use of such property for any purpose other than as a common area, as defined in the Habersham Covenants.

Genesis sold lots in the Habersham Plantation subdivision to individual purchasers. To convey title to the lots, Genesis obtained quitclaim deeds from Wachovia and issued warranty deeds to the purchasers. The quitclaim deeds conveyed the property, together with all easements and appurtenances, by lot number and specifically referred to the recorded Habersham Plantation subdivision plat for the property description. The warranty deeds also conveyed the property by lot number and specifically referred to the recorded Habersham Plantation subdivision plat for the property description.

Genesis defaulted on its loan with Wachovia, and Wachovia began foreclosure proceedings, as evidenced by a deed under power of sale, which was recorded on August 21, 2008. The deed recited that Wachovia had conducted a foreclosure sale of the subdivision property conveyed by the security deed, less and except the lots previously sold, and that Wachovia was the highest bidder at the sale. Genesis, acting by and through Wachovia, conveyed the subdivision property to Wachovia, specifically excluding the lots previously sold, and referring to the subdivision plat as a property description for those lots. The conveyance was expressly made subject to the Habersham Covenants. On August 20, 2008, Genesis At Habersham conveyed its rights as declarant under the Habersham Covenants to Wachovia.

On March 19, 2009, Wachovia conveyed its Habersham Plantation property, less the lots previously sold, to the appellant, Interchange, by limited warranty deed. The conveyance was expressly made subject to any matters to which the deed under power of sale were subject. In the limited warranty deed, Wachovia also quit-

claimed all rights as declarant under the Habersham Covenants, as supplemented, amended and modified.

Thereafter, Interchange took the position that it had no obligation to allow the lot owners access to any recreational facilities, and that it intended to use the ARA for its own purposes.

The appellees, Jerry Nusloch and other lot owners in the Habersham Plantation subdivision, sued Interchange and the Association, seeking (among other remedies) a declaratory judgment that they hold easements and rights to use, access and enjoy the common areas and the ARA; that Interchange and the Association are precluded from developing the ARA and adjoining salt marsh or using that property for any purpose other than as a common area; and that the Association is required to own and maintain the common areas and the ARA.

Interchange and the Association sought summary judgment, arguing that any easement rights the lot owners had obtained with respect to the common areas and the ARA were junior to Wachovia's senior lien and were extinguished when Wachovia foreclosed.[2] The lot owners responded and also moved for summary judgment, arguing that Wachovia subjected the property it acquired within Habersham Plantation to the subdivision plat and the Habersham Covenants when it released lots from its security deed by reference to the plat. The lot owners further argued that Wachovia subjected the property it acquired to the Habersham Covenants in the deed under power of sale and the subsequent limited warranty deed to Interchange.

The trial court determined that Wachovia's reference in the quitclaim deeds to the recorded plat to describe the property being released constituted an acknowledgment of the easements shown on the plat, thereby incorporating and ratifying the plat. The court further determined that Wachovia had subrogated its rights to the property at issue in the deed under power of sale it took from Genesis and the limited warranty deed it gave to Interchange because both deeds were made subject to the Habersham Covenants. On appeal, Interchange takes issue with both of those determinations.

Interchange appeals the grant of the lot owners' motion for summary judgment and the denial of its motion for summary judgment. We review a grant or denial of summary judgment de novo

---

[2] In the motion, Interchange acknowledged that the Association must maintain areas over which it had responsibility. According to Interchange, those responsibilities were limited to maintaining the private streets, which were owned by the Association, landscaping on certain lots abutting the streets and maintaining certain ponds, streams and/or wetlands. The trial court made no ruling regarding the Association's duties, and the Association has not appealed the trial court's order.

and view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmovant.[3]

The Habersham Covenants created an easement in favor of the lot owners for their use, access, and enjoyment in and to the subdivision's common areas and the ARA, which was made a part of the common area prior to foreclosure.[4] Interchange contends that the ARA was not properly made subject to the Habersham Covenants because Genesis did not file a "Supplemental Declaration" that referenced Article IX of the Habersham Covenants and because title to the ARA was never conveyed to the Association. Although not titled a "Supplemental Declaration," the declaration regarding the common areas plainly stated that the ARA and the adjoining salt marsh were to be included as a "Common Area," as defined in the Habersham Covenants, and restricted the use of those areas. Further, the Habersham Covenants did not require that the ARA be conveyed to the Association before it could become part of the "Common Area." The express intent of the declaration regarding the common areas was to make the ARA part of the common area and to restrict its use and development. Any failure by Genesis to follow the exact wording used to define a supplemental declaration did not render the Habersham Covenants inapplicable to the ARA.[5]

When Wachovia received subdivision property via the deed under power of sale, that property was subject to the Habersham Covenants. Although Interchange contends that Wachovia never intended to subject the subdivision property to the Habersham Covenants, "[t]he written instrument is considered the true, complete understanding between the parties."[6] And the language of the deed under power of sale expressly stated that the conveyance was subject to the Habersham Covenants.[7] Moreover, "[w]hen a grantee

---

[3] *Baxter v. Fairfield Financial Svcs.*, 307 Ga. App. 286, 287 (704 SE2d 423) (2010).

[4] See generally *Hendley v. Overstreet*, 253 Ga. 136, 137 (318 SE2d 54) (1984) (enforcing declaration of restrictive covenants that dedicated certain lots for use as a park or recreation area for the benefit of subdivision residents).

[5] See generally *McLean v. Turtle Cove Property Assn.*, 222 Ga. App. 709, 710-711 (1) (475 SE2d 718) (1996) (developer's failure to file supplemental declarations to include new lots added to subdivision, as required by original declaration, did not preclude covenants and restrictions from applying to new lots where purchaser had knowledge of covenants at time of purchase).

[6] *Hornsby v. Holt*, 257 Ga. 341, 343 (1) (359 SE2d 646) (1987) (citation omitted).

[7] See, e.g., *Hayes v. Lakeside Village Owners Assn.*, 282 Ga. App. 866, 867-869 (1) (640 SE2d 373) (2006) (lot owners bound by covenant where they took title, subject to restrictive covenants, from grantee of developer); *Bowman v. Walnut Mountain Property Owners Assn.*, 251 Ga. App. 91, 92 (553 SE2d 389) (2001) (physical precedent only) (corporation subject to covenants where it received title to subdivision lots by recorded deed that made lots "subject to" subdivision covenants and restrictions). "There is danger in reciting that the deed is 'subject' to certain things; if the title was not encumbered with them, you have made it so." Daniel F. Hinkel, Pindar's Georgia Real Estate Law and Procedure, § 26-141 (6th ed. 2004).

accepts a deed, he is bound by the covenants contained therein even though the deed has not been signed by him."[8]

Relying on *Springmont Homeowners Assn. v. Barber*,[9] Interchange contends that because Wachovia took title under its security deed before the restrictions expressed in the Habersham Covenants were imposed, Wachovia's interest in the subdivision property was not subject to the Habersham Covenants. Although *Springmont* also involved the sale of subdivision property by a bank following a foreclosure and the applicability of a subdivision's declaration of covenants and restrictions to a purchaser after foreclosure,[10] the case is distinguishable for several reasons. In *Springmont*, the specifics of the deed to the bank following foreclosure are not mentioned and there was no indication that the declaration applied to that deed or to the subsequent deed to the purchaser from the bank. Further, in that case, the bank specifically stated in a properly recorded writing that its interest in the property was *not* subject to the declaration.

In contrast, Wachovia accepted a deed that expressly made its interest in the subdivision property subject to the Habersham Covenants.[11] By accepting a deed with covenants and restrictions, the grantee consents to be bound by such covenants and restrictions.[12]

Wachovia's subsequent conveyance of the subdivision property to Interchange was also made subject to the Habersham Covenants because a grantee in a deed takes no greater title than that held by the grantor.[13] Interchange argues that the limited warranty deed did not constitute an agreement between it and Wachovia to subject the subdivision property to the Habersham Covenants. Assuming that were true, as grantor of the limited warranty deed, Wachovia could convey only that which it owned, and its interest in the property was subject to the Habersham Covenants. Consequently, the property interest created by the limited warranty deed was subject to the Habersham Covenants.[14]

Because the Habersham Covenants remained applicable to the Habersham Plantation subdivision property at issue here, the trial

---

[8] OCGA § 44-5-39; *Bowman*, supra at 95 (1) (d); *Hill v. Moye*, 221 Ga. App. 411, 413 (2) (471 SE2d 910) (1996).

[9] 221 Ga. App. 713 (472 SE2d 695) (1996).

[10] See id.

[11] See *Rhodes v. Anchor Rode Condo. Homeowner's Assn.*, 270 Ga. 139, 140 (1) (508 SE2d 648) (1998) (property subject to security deed remains so *unless* grantee releases property by conveyance or contractually subordinates its rights).

[12] *Bowman*, supra at 95-96 (1) (d); *Bryan v. MBC Partners, L.P.*, 246 Ga. App. 549, 551 (3) (541 SE2d 124) (2000).

[13] *Hornsby*, supra at 342 (1).

[14] See id. at 342-343 (1).

court correctly determined that the lot owners had a right and easement of use, access and enjoyment to the subdivision's common areas and the ARA.

*Judgment affirmed. Andrews and McFadden, JJ., concur.*

DECIDED SEPTEMBER 1, 2011 —

*McCorkle & Johnson, Phillip R. McCorkle, David H. Johnson, Mathew M. McCoy, Thomas M. Gore*, for appellant.

*Weiner, Shearouse, Weitz, Greenberg & Shawe, William G. Glass*, for appellee.