[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-14331

_____

D.C. Docket Nos. 1:10-cv-00187-ODE ; 08-BKC-06612-JEM

In Re:
  DENISE CODRINGTON,

                                                        Debtor.

_____

WELLS FARGO BANK, N.A.,

                                                        Plaintiff - Appellant,

                        versus

NEIL C. GORDON,
Chapter 7 Trustee for the Estate
of Denise Codrington,

                                                        Defendant - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(August 24, 2012)

Before TJOFLAT and PRYOR, Circuit Judges, and HUCK,[*] District Judge.

PER CURIAM:

CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT TO THE SUPREME COURT OF GEORGIA PURSUANT TO O.C.G.A. § 15-2-9.

TO THE SUPREME COURT OF GEORGIA AND ITS HONORABLE JUSTICES:

This case involves unanswered questions of Georgia law that are central to this appeal.  Because these questions are determinative of the case and there are no controlling precedents from the Supreme Court of Georgia, we respectfully certify these questions for resolution.

## I.

This case arose in the United States Bankruptcy Court for the Northern District of Georgia.  The primary issue is whether, under Georgia law, a deed to secure a debt that lacks the signature of an unofficial witness on the deed's signature page provides constructive or inquiry notice to a hypothetical bona fide

_____

[*] Honorable Paul C. Huck, Senior United States District Judge for the Southern District of Florida, sitting by designation.

purchaser where a rider to the security deed contains the necessary attestation of an unofficial witness. The facts are not in dispute.

In 2006, Denise Codrington and Alvina Codrington executed a security deed to Wells Fargo Bank to secure a loan.[1] The deed (the "Security Deed") conveyed real property located at 4253 Kensington Cove, College Park, Fulton County, Georgia, described as Lot 1, Block A, Kensington Heights as per Plat Book 269, Pages 28–38, Fulton County, Georgia records (the "Property"). The Security Deed is dated September 21, 2006 and was recorded on October 13, 2006.

The Security Deed contains eight pages, with each page numbered at the bottom.[2] The Security Deed contains numerous standard provisions that we need not discuss at any length. Of particular note, Paragraph 23 on Page 7 of the Security Deed, "Riders to this Security Instrument," provides:

> If one or more riders are executed by Borrower and recorded together with this Security Instrument, the <u>covenants</u> of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.

(Emphasis added.) Following Paragraph 23, there are five boxes available to

---

[1] Denise Codrington is the debtor in this case.

[2] The format of the pagination of the Security Deed is "Page __ of 8."

3

check if various types of riders are attached: (1) Condominium Rider, (2) Planned

Unit Development Rider, (3) Growing Equity Rider, (4) Graduated Payment Rider,

and (5) Other [specify].  Only one box, "Other [specify]," is checked.  The only

specified rider is an "ARM Rider."

Page 8 of the Security Deed contains the signature page.  Page 8 reads: "BY

SIGNING BELOW, Borrower accepts and agrees to the terms contained in this

Security Instrument and in any rider(s) executed by Borrower and recorded with

it."  (Emphasis added.)  The signature page contains ten signature lines—eight

lines labeled for the signatures of potential borrowers, one line without a label,

and one line designated for an "Unofficial Witness."  The signature page also

contains a designated space for the signature of a notary public.

The signatures of Denise Codrington and Alvina Codrington appear on two

of the eight lines labeled "Borrower."  The signature page also contains the

signature and seal of Kenneth S. Bray, a notary public of DeKalb County, Georgia.

The signature line labeled "Unofficial Witness," however, is blank.  There is no

other indication that anyone witnessed the execution of the Security Deed.

The next page, Page 9, is labeled as "Exhibit A."  This page contains the

legal description of the Property.  Page 9 is not formatted in a similar manner as

the preceding eight pages; however, Exhibit A is expressly referenced on Page 2

4

of the Security Deed.

Following the Security Deed and Exhibit A is a three-page Adjustable Rate Mortgage Rider ("ARM"). Although the Security Deed specifies that only the ARM is attached, additional documents follow the ARM. There is a single-page Planned Unit Development Rider and a second single-page document that contains a Waiver of Borrower's Rights Rider (the "Rider"), a Closing Attorney's Affidavit, and a Foreclosure Closing Disclosure.

The Waiver of Borrower's Rights Rider contains five numbered terms. Terms 1, 2, and 4 are not relevant to this dispute.[3] Term 3 provides that "[the Debtors have] read this deed and specifically this paragraph and paragraph 17 of this deed . . . and grantor[s] [have] been afforded an opportunity to consult with counsel of [their] choice prior to executing this deed." (Emphasis added.) Term 5 states that Grantors expressly agree that "the provisions hereof are incorporated into and made a part of the security deed." (Emphasis added.)[4] This section contains the signatures of both Denise Codrington and Alvina Codrington, a valid

---

[3] Term 1 of the Waiver of Borrower's Rights Rider acknowledges the right to accelerate the debt. Term 2 waives any due process rights to a judicial hearing before the lender exercises a remedy. Term 4 acknowledges that any waivers were made knowingly, intentionally, and willingly as part of the loan transaction.

[4] The Rider does not contain a description or definition of "this deed" or "the security deed."

notary (Kenneth S. Bray), and the signature of an unofficial witness.

Next, on this same page, is the Closing Attorney's Affidavit.  The affidavit contains form language, noting that the attorney reviewed and explained the terms and provisions of the "Deed to Secure Debt" and the Waiver of Borrower's Rights Rider to the debtors prior to execution.[5]  The signatures of the closing attorney (Kenneth S. Bray) and the seal and signature of a notary (Melinda J. Seymour) appear in this section.

Finally, below the affidavit is a Foreclosure Closing Disclosure executed by both of the Codringtons.  All of the above-described documents were filed and recorded contemporaneously with the Security Deed.

II.

On June 9, 2008, Denise Codrington filed this Chapter 7 case.  The Bankruptcy Court appointed Neil C. Gordon as the Chapter 7 Trustee.  Gordon brought this proceeding in an effort to avoid Wells Fargo's interest in the Property under 11 U.S.C. § 544(a)(3).  Section 544(a) provides, in pertinent part,

> (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by –

---

[5] This page contains no definition of what constitutes the "Deed to Secure Debt."

6

. . . .

> (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

Georgia law determines whether Gordon, as the Chapter 7 Trustee, can use the "strong-arm" power of Section 544(a)(3) of the Bankruptcy Code to avoid or set aside a security deed that is valid but unattested by an unofficial witness. See Butner v. United States, 440 U.S. 48, 55, 99 S. Ct. 914, 918, 59 L. Ed. 2d 136 (1979) ("Property interests are created and defined by state law."). Wells Fargo argues that an individual in this case would be charged with either (1) constructive notice or, alternatively, (2) inquiry notice of its interest created by the Security Deed, and thus the hypothetical party would not be a bona fide purchaser under § 544(a)(3). We discuss each argument in turn.

### A.

O.C.G.A. § 44–14–61 states that "[i]n order to admit deeds to secure debt . . . to record, they shall be attested or proved in the manner prescribed by law for mortgages." O.C.G.A. § 44–14–33 provides the requirements for attesting mortgages:

7

In order to admit a mortgage to record, it must be attested by or acknowledged before an officer as prescribed for the attestation or acknowledgment of deeds of bargain and sale; and, in the case of real property, a mortgage must also be attested or acknowledged by one additional witness.  In the absence of fraud, if a mortgage is duly filed, recorded, and indexed on the appropriate county land records, such recordation shall be deemed constructive notice to subsequent bona fide purchasers.

The Supreme Court of Georgia has held that the entirety of O.C.G.A. § 44–14–33 applies to the recording of security deeds.  See U.S. Bank Nat'l Ass'n v. Gordon, 709 S.E.2d 258, 260 (Ga. 2011).

In 2011, the Supreme Court of Georgia answered a certified question from the United States District Court for the Northern District of Georgia in a similar dispute regarding the proper application of O.C.G.A. § 44–14–33.[6]  In U.S. Bank National Ass'n v. Gordon, the Supreme Court of Georgia emphasized that the plain language of O.C.G.A. § 44–14–33 requires recordation of a "duly filed, recorded, and indexed" deed, id. at 261 (emphasis in original), and that such a recording would be deemed constructive notice to subsequent bona fide purchasers.[7]  To determine whether a deed is "duly filed, recorded, and indexed,"

---

[6]  The Supreme Court of Georgia answered this question after the Bankruptcy Court in this case had made its decision and while this matter was pending before the District Court.

[7]  It is worth noting that the parties in that case were represented by Neil C. Gordon and Michael Fredrick Holbein, of Arnall, Golden & Gregory LLP, Atlanta (representing Neil C. Gordon as the Chapter 7 Trustee), and Edward Davison Burch, Jr., of Smith, Gambrell & Russell, LLP (representing the creditor).

8

the court must look to see whether, from the perspective of the clerk responsible for recording documents, the document appears on its face to comply with O.C.G.A. § 44–14–33.  See id. at 261 ("Thus, the first sentence of O.C.G.A. § 44–14–33 and the statutory recording scheme indicate that the word 'duly' in the second sentence of O.C.G.A. § 44–14–33 should be understood to mean that a security deed is 'duly filed, recorded, and indexed' only if the clerk responsible for recording determines, from the face of the document, that it is in the proper form for recording, meaning that it is attested or acknowledged by a proper officer and (in the case of real property) an additional witness.").  A recorded mortgage or security deed that lacked the required attestations, the court continued, would be defective on its face.  See id. ("[A] security deed which appears on its face to be properly attested should be admitted to record, but . . . a deed that shows on its face that it was not properly attested or acknowledged, as required by statute, is ineligible for recording." (internal quotation marks omitted) (internal citation omitted)).  Such a patently defective deed would not be deemed to provide sufficient constructive notice to a hypothetical subsequent bona fide purchaser.  See id.  Turning to the facts of the certified question in that case, the court then concluded that, because the deed lacked both an official and unofficial witness, it was not "duly" recorded, it did not provide sufficient constructive notice under

9

Georgia law, and the trustee could validly employ its "strong-arm" powers under 11 U.S.C. § 544(a)(3). See id. at 262.

Here, there is no unofficial attestation on the signature page of the Security Deed. The crux of this dispute, therefore, is the significance of the unofficial attestation on the Waiver of Borrower's Rights Rider.[8]

### 1.

Wells Fargo takes the position that the Security Deed was properly attested, and thus "duly" recorded, because the unofficial witness's attestation of the Waiver of Borrower's Rights Rider should be deemed a part of the Security Deed. As an initial matter, Wells Fargo argues that the Supreme Court of Georgia has never held that the attestation must appear in a particular location; so long as a security deed appears on its face to contain the attestation of one official and one unofficial witness, the statutory requirements will be met. Appellant's Br. at 8. Thus, Wells Fargo's position hinges primarily on whether the Security Deed and the Waiver of Borrower's Rights Rider should be treated as one document, such that the "single document" appears to contain the necessary attestations. Wells

---

[8] We believe there is no plausible argument after the supreme court's decision in U.S. Bank National Ass'n v. Gordon, 709 S.E.2d 258 (Ga. 2011), that the Security Deed, standing alone, would meet the requirements of O.C.G.A. § 44–14–33. The issue is what impact, if any, the properly attested Rider has on the improperly attested Security Deed.

Fargo presents two arguments in support of its conclusion that the Security Deed and Waiver of Borrower's Rights Rider, taken together, comply with O.C.G.A. § 44–14–33 and provide constructive notice to a hypothetical bona fide purchaser.

First, the Security Deed and Waiver of Borrower's Rights Rider were signed, executed, and filed contemporaneously with each other and therefore "appear[] from the perspective of a recording clerk" to be properly attested. Appellant's Br. at 5. Wells Fargo claims that "[t]he Rider is the last page attached to the Security Deed, where the clerk could expect to find the borrower's execution and the attestations." Appellant's Br. at 12. Whether something appears in recordable form should not turn on a clerk's "legal determination as to whether the attestations apply to only a part or to the whole of the Security Deed and whether that affects recordability." Appellant's Br. at 13. Wells Fargo argues that "if the Security Deed appears to have the required attestations, it may be recorded, and once recorded, the Security Deed affords constructive notice[;] . . . . [t]he clerk cannot be required to employ a test that moves beyond visual inspection and into legal interpretation and deconstruction." Appellant's Br. at 13–14. The facts here, therefore, indicate that the single package of documents would appear on its face to comply with the statutory requirements of O.C.G.A. § 44–14–33. Id.

Second, the incorporation clauses of the Security Deed and the Waiver of Borrower's Rights Rider are material because both the contents and the attestations of the Waiver of Borrower's Rights Rider are incorporated into the Security Deed. Incorporation of the Rider's attestation should be deemed an attestation of the Security Deed. In the alternative, even if the attestation cannot serve as the actual attestation for the Security Deed and the documents would otherwise appear on their face to be distinct, the incorporation clauses would make the Security Deed and Rider appear to be a single, indivisible document for the purposes of meeting the requirements of O.C.G.A. § 44–14–33.[9]

Wells Fargo states that "the witnessing and notarization of the Rider also constitute a witnessing and notarization of the execution of the Security Deed itself." Appellant's Br. at 15. Wells Fargo cites precedent of the Supreme Court of Georgia in support of its position, see Bowman v. Walnut Mountain Property Owners Ass'n, Inc., 553 S.E.2d 389, 393 (2001) ("A written and filed agreement may also incorporate by reference . . . other documents by specific reference and identification so that such documents are treated as if a part of the document

---

[9] This argument is basically the same as Wells Fargo's primary argument, with the only difference being that Wells Fargo's primary argument is, in essence, that the documents appear to be one, single document irrespective of the incorporation provisions, while the secondary argument hinges on the application of the incorporation clauses to reach the conclusion that the documents would appear as one document.

12

making the reference."), and precedent from this court interpreting Georgia law,

see Gordon v. Terrace Mortgage Co. (In re Kim), 571 F.3d 1342 (11th Cir. 2009).

In Terrace Mortgage, this court held that the execution of a security deed lacking a

notary seal of an official witness nevertheless substantially complied with a

remedial statute[10] when a closing attorney's affidavit contained sufficient

attestations to the execution of the deed and was incorporated into the security

deed.[11]  Id. at 1346.  In so holding, that panel of this court stated, "It is thus clear

that the Affidavit was specifically incorporated into and became part and parcel of

a single document . . . ."  Id.[12]  Wells Fargo cites Terrace Mortgage Co. for the

proposition that if incorporation makes one document (the Waiver of Borrower's

Rights Rider, in this case) "part and parcel" of another (the Security Deed), then

the attestation of the Waiver of Borrower's Rights Rider should also "provide[] the

---

[10]  See O.C.G.A. § 44-2-18 ("If a deed is neither attested by nor acknowledged before one of the officers named in Code Section 44-2-15, it may be recorded upon the affidavit of a subscribing witness, which affidavit shall be made before any one of the officers named in Code Section 44-2-15 and shall testify to the execution of the deed and its attestation according to law. A substantial compliance with the requirements of this Code section shall be held sufficient in the absence of all suspicion of fraud.").

[11]  Of note, the affidavit was on the same page as a Waiver of Borrower's Rights Rider—just as is the case here—and involved the same attorneys who are adverse in this matter. See supra note 7.

[12]  The panel assumed for the sake of argument that the omission of the seal constituted a patent defect under O.C.G.A. § 44–14–33. See Gordon v. Terrace Mortgage Co. (In re Kim), 571 F.3d 1342, 1344–45 (11th Cir. 2009).

13

necessary attestation" for the Security Deed.[13]  Appellant's Br. at 15–16; see also Appellant's Reply Br. at 4.  Thus, under Wells Fargo's reasoning, the Security Deed viewed in combination with the Waiver of Borrower's Rights Rider complies with O.C.G.A. § 44–14–33.

2.

Gordon takes the opposite position.  He argues that the unofficial witness's attestation of the Waiver of Borrower's Rights Rider does nothing to change the fact that the Security Deed still lacks the proper attestation of an unofficial witness; while not precisely on point, the Supreme Court of Georgia's holding in U.S. Bank National Ass'n is persuasive to the dispute at hand.

First, Gordon argues that the Security Deed does not "appear" to be properly attested and does not comply with O.C.G.A. § 44–14–33.  The Security Deed, Gordon highlights, is clearly numbered as including eight pages, with the bottom of each page identified as Page __ of 8.  Appellee's Br. at 13.  Moreover, following Paragraph 23 of the Security Deed, where all of the attached Riders should be listed, the only specified additional rider is the ARM rider; the Waiver

---

[13]  This court expressly refused to address this issue in Terrace Mortgage; any citation to that decision for the proposition asserted by Wells Fargo is, at best, pure dicta.  See id. at 1346 n.7 ("We are not holding that the attestation or the notary's seal on the Affidavit substitutes for the necessary attestation in the Security Deed.  We are holding that the Affidavit meets the requirements under § 44–2–18 to cure a defective attestation and that the Affidavit testifies to both the execution and the attestation of the Security Deed as required by the statute.").

of Borrower's Rights Rider is not listed.  In short, Gordon argues that the Security

Deed would not "appear" to a clerk to be properly attested.  To the contrary, a

clerk who actually noticed the specific pagination and read Paragraph 23 would

have good reason to conclude that the Security Deed was limited to eight pages;

and, even assuming the clerk would look to the ARM Rider, the clerk could

reasonably conclude his or her inspection at that point.  Nowhere in those eight

pages of the Security Deed itself, Gordon claims, does an attestation of an

unofficial witness appear.  He continues, noting that Wells Fargo's attempts to

recharacterize the holding of this court's decision in Terrace Mortgage are without

merit because the court in that case expressly focused its analysis on the impact of

a remedial statute not relevant in this case.  Appellee's Br. at 12–14.  The Security

Deed and the Waiver of Borrower's Rights Rider should be treated as two distinct

documents.  Thus, the Security Deed itself would appear on its face to lack the

proper attestations.[14]

---

[14] Gordon also argues that the signature page was "the only place where a notary and an additional witness could certify to the execution of the Security Deed."  Appellee's Br. at 14–15.  The argument that the only place for a witness's attestation is on the last page of the Security Deed (page 8, the signature page) is less convincing in light of precedent from the Supreme Court of Georgia.  See Horton v. Murden, 43 S.E. 786, 787 (1903) (concluding that the "signature need not necessarily be at the end of the instrument").  As we note infra, both the Bankruptcy Court and District Court adopted Gordon's position on this particular issue.  We think that Wells Fargo appears to have a colorable argument that Georgia law does not require the attestations to be found in a particular place in every document (the signature page), as Gordon's position seems to imply.  Whether the signature page is the only page where a

15

Second, Gordon argues that the incorporation clauses are irrelevant to the question of whether the Security Deed complies with O.C.G.A. § 44-14-33. Appellee's Br. at 17.  Gordon's response to Wells Fargo is essentially twofold: (1) the incorporation clauses of these documents do not make the attestation to the execution of a rider tantamount to the execution of a security deed, and (2) the presence of an incorporation clause similarly does not make it "appear" as if a security deed is properly executed.

Quite simply, the attestation of the Waiver of Borrower's Rights Rider is not an attestation of the Security Deed.  Gordon draws a distinction between the incorporation of the <u>contents</u> of one document and the incorporation of the <u>attestation</u> of one document.  Appellee's Br. at 21–22.  It is clear under Georgia law that the contents of one document can be incorporated into another; Wells Fargo cites many of those precedents.[15]  It is an entirely different matter, Gordon urges, when one attempts to incorporate the attestation of one document to serve

witness's signature could appear is not the essential issue in this dispute, however.

[15]  Gordon argues that Wells Fargo misses this crucial distinction, relying on cases such as <u>Gordon v. Terrace Mortgage Co.</u> (<u>In re Kim</u>), 571 F.3d 1342 (11th Cir. 2009), <u>Bowman v. Walnut Mountain Property Owners Ass'n, Inc.</u>, 553 S.E.2d 389 (2001), and <u>Crooke v. Property Management Services, Inc.</u>, 110 S.E.2d 677 (1959), which all discuss the incorporation of the contents of one document into another, rather than citing cases where the attestation of one document can serve as the attestation of another document by incorporation.  <u>See</u> Appellee's Br. at 19–20.  Gordon also distinguishes another case cited by Wells Fargo, <u>Cocke v. Bank of Dawson</u>, 180 S.E. 711 (1935), as concerning another unrelated issue.  <u>See</u> Appellee's Br. at 21–22.

16

as the attestation for another.

Under Gordon's view, an attestation of one document cannot be incorporated by reference to serve as the attestation of another document. Attestations involve only the document that the individual observes being executed. To attest means "to bear witness," or "to affirm to be true or genuine," or "to authenticate by signing as a witness." Black's Law Dictionary 124 (7th ed. 1999). To authenticate means "to prove the genuineness of (a thing)." Id. at 127 (7th ed. 1999). Thus, when O.C.G.A. § 44-14-33 prescribes the requirement that the deed be "attested or acknowledged by one additional witness," it is requiring an individual to "bear witness" and to "prove the genuineness" of the execution of the Security Deed. Gordon argues that just because an unofficial witness has "b[orn] witness" and has "prove[n] the genuineness" of the execution of the Rider does not necessarily mean that the same witness can swear as to the execution of the Security Deed. Indeed, whether a witness can attest to the execution of the Security Deed is entirely contingent on whether that individual actually witnessed the deed's execution. Attestations, therefore, cannot be incorporated by reference in the same way as the contents of a document. Appellee's Br. at 18.

Even if it is possible to incorporate an attestation by reference, Gordon also highlights that the incorporation clauses in both the Security Deed and the Waiver

17

of Borrower's Rights Rider expressly incorporate the <u>contents</u> of the Rider into the Security Deed, not the <u>attestations</u>. The language of the Security Deed refers only to the "covenants" and the "terms" of any incorporated riders, while the Rider's incorporation language states that the "provisions" of the Rider are incorporated into the Security Deed.[16] Thus, even assuming incorporation of attestation is possible, the plain language of the incorporation clauses at issue in this agreement does not do so.

Moreover, Wells Fargo's attempts to use the incorporation clause of Paragraph 23 to claim that the Security Deed would "appear" as properly attested, even if the clause would not result in the Security Deed actually being properly attested, are wholly without merit. In essence, Gordon frames Wells Fargo's argument thusly: (1) the incorporation clause makes the Waiver of Borrower's Rights Rider "part and parcel" of the Security Deed under this court's decision in

---

[16] Paragraph 23 on Page 7 of the Security Deed provides

> If one or more riders are executed by Borrower and recorded together with this Security Instrument, the <u>covenants</u> of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.

(Emphasis added.)  Page 8 of the Security Deed reads: "BY SIGNING BELOW, Borrower accepts and agrees to the <u>terms</u> contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it."  (Emphasis added.)  And Term 5 of the Rider states that Grantors the expressly agree that "the <u>provisions</u> hereof are incorporated into and made a part of the <u>security deed</u>."  (Emphasis added.)

18

Terrace Mortgage, such that they constitute a single document; (2) the clerk would be compelled to review the entire "document" for attestations, including the Rider; (3) the clerk would find the necessary attestations on the Rider; (4) the "single document" would appear on its face to be in recordable form; (5) the clerk would only be able to detect a defect if he or she scrutinized whether the attestation applied only to one part of the document (the Rider) and did not attest to other parts (the Security Deed); and (6) the clerk cannot be required to employ a test that moves beyond visual inspection and into legal interpretation and deconstruction.

Gordon explains why Wells Fargo's argument is flawed. Working backward, a clerk must look to the face of a document to see whether it appears to comply and the clerk "cannot be required to employ a test that moves beyond visual inspection and into legal interpretation and deconstruction." That said, how can a clerk know whether the Waiver of Borrower's Rights Rider is "part and parcel" of the Security Deed such that they form a single document unless the clerk searches through the deed for the incorporation clause? Gordon, therefore, argues that even under Wells Fargo's theory of the case, it would be patently absurd to require a clerk to search through a security deed to determine whether there is an incorporation clause, discern the legal effect of said clause, and then identify whether a particular rider is one of the incorporated documents. In short,

19

Gordon agrees that because "the clerk cannot be called upon to dissect the Security Deed, the analysis ends there." Appellant's Br. at 14. Gordon simply disagrees with the conclusion Wells Fargo reaches from that premise, arguing instead that the legal analysis required to determine whether a rider has been incorporated supports Gordon's own theory that the attestation of the Rider should not be included in determining whether the Security Deed was properly attested under O.C.G.A. § 44-14-33. Appellee's Br. at 15–16.

3.

The Bankruptcy Court held that the proper attestation of the Rider and incorporation of the contents of the Rider into the Security Deed did not have any effect on the improper attestation of the Security Deed in terms of meeting the requirements of O.C.G.A. § 44-14-33. As an initial matter, the Bankruptcy Court rejected Wells Fargo's attempts to characterize the Security Deed, Exhibit A, and all of the riders as one document. The Bankruptcy Court also concluded that the attestation of the Rider, while giving rise to a presumption that the witness observed the Rider's execution, could not give rise to a similar presumption regarding the execution of the Security Deed. An unofficial witness's signed attestation signifies that the witness can speak to the validity of the execution of a particular document. The attestation of the Rider, therefore, cannot serve as the

20

attestation of another document (the Security Deed) merely because there is an incorporation clause.  Rather, the court concluded that the signature page (page 8 of the Security Deed) is the "only place" where the attestation of the Security Deed could properly be recorded.[17]

The District Court affirmed.[18]  In agreeing with the Bankruptcy Court, the District Court drew a distinction between the incorporation of the <u>contents</u> of one document into another document, on the one hand, and the attempt by Wells Fargo to incorporate the <u>attestation</u> of the former document to the latter, on the other.  An attestation, the court reasoned, amounted to a declaration that the witness observed the execution of the document.  As such, one cannot incorporate an attestation in the same way one can incorporate the contents—terms, promises, covenants, provisions, and the like.  Because the proper attestation of the Rider did nothing to change the fact that the Security Deed lacked the attestation of an unofficial witness, no constructive notice was given under O.C.G.A. § 44-14-33, and the

---

[17] It is unclear to us the intendment of the Bankruptcy Court's declaration that the signature page was the "only" page where the attestation could have been written.  <u>See</u> <u>supra</u> note 14 (noting that Wells Fargo's argument that Georgia law does not require a signature in any particular location within a document warrants consideration).

[18] As we noted <u>supra</u> note 6, the Supreme Court of Georgia issued its opinion in <u>U.S. Bank National Ass'n v. Gordon</u> after the Bankruptcy Court ruled on these issues but before the District Court issued its order.  For the sake of completeness, we summarize the orders of both of the courts below.

Bankruptcy Court correctly resolved the dispute.

B.

In the alternative, Wells Fargo maintains that the properly attested Rider creates sufficient inquiry notice under Georgia law.  O.C.G.A. § 23-1-17 provides

> Notice sufficient to excite attention and put a party on inquiry shall be notice of everything to which it is afterwards found that such inquiry might have led.  Ignorance of a fact due to negligence shall be equivalent to knowledge in fixing the rights of parties.

Georgia law "imputes knowledge of an earlier interest to a later purchaser of an interest in land whenever there is any circumstance which would place a man of ordinary prudence fully upon his guard."  Gordon v. Novastar Mort., Inc., (In re Hedrick), 524 F.3d 1175, 1183 (11th Cir. 2008) (internal punctuation and citations omitted).

1.

Wells Fargo argues that a subsequent bona fide purchaser would have been put on inquiry notice by virtue of the "duly filed, recorded, and indexed" Waiver of Borrower's Rights Rider.  Appellant's Br. at 16–17.  Specifically, Wells Fargo asserts that the Rider identifies the borrowers and the lender, contains the same date as the Security Deed, expressly refers to "this deed" and "the security deed," and states that "the provisions hereof are incorporated into and made a part of the

22

security deed." Id.

Gordon takes the opposite position. Appellee's Br. at 23–25. He argues that a man of ordinary prudence would not think that further investigation is appropriate because there is nothing in the Waiver of Borrower's Rights Rider "sufficient to excite attention." Id. The Rider, viewed alone, does not describe the Property and does not appear in the Property's chain of title; what's more, any general references to "this deed" and "the security deed" are too ambiguous to create sufficient inquiry notice of the particular deed in this case. Id. Gordon concludes that "[i]n short, the [Waiver of Borrower's Rights Rider] cannot create a duty to inquire into the existence of encumbrances on a property it does not specifically identify." Appellee's Br. at 25.

2.

The Bankruptcy Court and District Court rejected Wells Fargo's arguments. Both courts held that the Rider does not indicate which particular security deed it refers to and is incorporated into, does not identify the location of the deed, and would not appear in the chain of title of the Property. In short, the recording of a waiver of rights rider simply does not provide sufficient notice to a hypothetical bona fide purchaser when the waiver would not be included in the Property's chain of title. See Va. Highland Civic Ass'n, Inc. v. Paces Props., Inc., 550 S.E.2d

23

128, 130 (Ga. App. 2001) ("[A] purchaser is not charged with constructive notice of interests or encumbrances which have been recorded outside the chain of title.").

III.

Definitive resolution of this dispute by the Supreme Court of Georgia will add clarity and stability to a critical area of the law. We hereby respectfully certify the following questions for resolution:

> 1. WHETHER A SECURITY DEED THAT LACKS THE SIGNATURE OF AN UNOFFICIAL WITNESS SHOULD BE CONSIDERED "DULY FILED, RECORDED, AND INDEXED" AS REQUIRED BY O.C.G.A § 44-14-33, SUCH THAT A SUBSEQUENT HYPOTHETICAL BONA FIDE PURCHASER WOULD HAVE CONSTRUCTIVE NOTICE WHEN THE DEED INCORPORATES THE COVENANTS, TERMS, AND PROVISIONS OF A RIDER THAT CONTAINS THE ATTESTATIONS REQUIRED BY O.C.G.A § 44-14-33 AND SAID RIDER IS FILED, RECORDED, AND INDEXED WITH THE SECURITY DEED?
>
> 2. IF THE ANSWER TO QUESTION ONE (1) IS IN THE NEGATIVE, WHETHER SUCH A SITUATION WOULD NONETHELESS PUT A SUBSEQUENT HYPOTHETICAL BONA FIDE PURCHASER ON INQUIRY NOTICE?

We do not intend the phrasing of these questions to limit the court in its consideration of the problem posed by the case. As we have noted previously:

> [T]he particular phrasing used in the certified question is not to restrict the Supreme Court's consideration of the problems involved

24

and the issues as the Supreme Court perceives them to be in its analysis of the record certified in this case.  This latitude extends to the Supreme Court's restatement of the issue or issues and the manner in which the answers are given, whether as a comprehensive whole or in subordinate or even contingent parts.

Swire Pac. Holdings v. Zurich Ins. Co., 284 F.3d 1228, 1234 (11th Cir. 2002) (alteration in original) (quoting Martinez v. Rodriquez, 394 F.2d 156, 159 n.6 (5th Cir. 1968)).

In order to assist the court's consideration of the case, the entire record, along with the briefs of the parties, shall be transmitted to the court.

QUESTION CERTIFIED.

25